(No. 24843.—

JOSEPH M. ANDERSON, Appellee *vs.* THE DEPARTMENT OF FINANCE, Appellant.

*Opinion filed December 19, 1938.*

OTTO KERNER, Attorney General, (JOHN F. MCGINNIS, WILTON A. CARR, HAROLD G. TALLEY, and W. F. GRAY, of counsel,) for appellant.

Mr. JUSTICE GUNN delivered the opinion of the court:

On August 19, 1936, the Department of Finance notified Joseph M. Anderson, appellee, of a time and place for hearing to determine a tax liability under the Retailers' Occupation Tax act and notified the appellee to produce at said hearing any and all books, records, papers and memoranda relating to sales of tangible personal property made since July 1, 1933. Appellee appeared at this hearing. He was engaged in the business of operating a tavern where food and drinks were sold at retail. His attorney was also present at the hearing and stated that he wanted to find out the procedure and was not trying to interpose any legal objection to stop the proceeding. A representative of the department read section 4 and section 8 of the Retailers' Occupation Tax act, whereupon the attorney made a statement that Anderson operated the tavern and that he had a book showing his daily receipts, and, further, that he was able to show that Anderson had borrowed money to tide him over to make a living, and that was all the statement he had to make. Anderson was sworn and testified that his licenses cost him $575 a year and that light, water and electrical refrigeration amounted to $345 a year, and that from month to month he bought beer and as it was used up it was replaced by a distributor—in other words, that his stock was replenished as it moved through the place of business; that he handled several kinds of beer, sandwiches, foods and whisky. The book presented by appellee, but not introduced in evidence, showed that for the month of March, 1934, his total sales were $84. An investigator

was sworn who testified that for the same month (March, 1934) the Pabst distributor sold appellee $161.15 worth of beer, and that he had checked sales by other distributors to appellee. Appellee's attorney said he was willing to stipulate that the returns were made from the book which he had in his hand, whereupon the representative of the Department of Finance asked appellee if he had a cash-register. The attorney then instructed appellee not to answer any further questions, as he understood all the department could do, if it was not satisfied with the return, was to add a penalty; that he was there for the purpose of adjusting things, and, upon being informed that the department was producing evidence as to purchases, the attorney stated he didn't care to go into it any more, upon which he was informed that the department would correct returns of each and every month. A controversy ensued in which the attorney insisted that they talk to him and not his client; that he thought the procedure was unreasonable and that if the department would submit some idea of what they thought appellee owed, he would take it up with the client, and finally wound up by saying that if the department would give him a bill of what was claimed to be due, that appellee and the attorney would determine whether it was proper to pay it, and thereupon walked out at the hearing.

The investigator proceeded to testify that, from examination of other similar places, in his judgment there had been gross sales covered by the three-year period, of $22,400. After deducting returns already made, the net amount upon which it is claimed the tax had not been paid was $18,756.63, which was set up in the form of an amended return under date of July 2, 1936, and upon which there was due the sum of $469.96, taxes and penalties. The exhibits introduced for the purchase of one brand of beer, alone, for twenty-two months, amount to over $2600. Upon the best information obtainable, the department spread the tax liability and penalties over the entire period commencing with

the month of July, 1933, and ending with the month of June, 1936, and, giving appellee credit for all taxes paid by him, determined the above sum was due from appellee. A notice of this assessment, together with the amended return and facts upon which it is based, was mailed to appellee on September 8, 1936.

Appellee filed a petition for writ of *certiorari* in the circuit court of Peoria county, to require the Department of Finance to bring up the record. This writ was issued, whereupon the Department of Finance made a return to the writ, showing the procedure and facts above set forth. Appellee made a request for a jury trial which was denied. Thereupon the court overruled the motion of the Department of Finance to quash the writ of *certiorari* and found that the return of the Department of Finance failed to show facts to sustain the assessment levied, sustained the writ of *certiorari* and quashed the return made by the Department of Finance. No evidence was offered at any time by appellee, either in court or before the person conducting the hearing for the department, as to the accuracy of the returns made by him.

The record is incompletely abstracted, but an examination discloses, by computation, that the appellee had paid during the three-year period, tax on gross sales amounting to $3530. Taking the year 1934 for illustration: From the amount of tax returned appellee only made sales of $1164. Part of the amended return mailed appellee shows that, in eleven months of 1934, appellee purchased Pabst beer alone amounting to $1104.55. From this circumstance, considering there were other things sold, it is obvious that the original return was inaccurate.

The statute then in force provides: "If the department has reason to believe, and does believe, that any return is incorrect, after notice to the person making the return and the hearing, it shall correct such return according to its best judgment and information, which return so corrected by the

department shall be *prima facie* correct." (Smith-Hurd Stat. 1935, chap. 120, par. 443.) All requirements for a hearing under the law were complied with by the department. The appellee was given an opportunity to produce evidence to show his original returns were correct. Through his attorney he not only declined to do this, but seemed to be under the impression that he could receive a settlement proposition from the department, or that the department could make up a bill of what it claimed, after which the attorney and his client could make up their minds whether they would pay or not. Appellee and his attorney were fully advised of the law by the examiner calling their attention specifically to the provisions of both section 4 and section 8 of the act. The attitude of the department was not arbitrary or unreasonable. On the other hand, the attitude of appellee and his counsel seemed to be that if they furnished no evidence the department would be helpless. The facts are quite similar to those in *Department of Finance* v. *Player,* 365 Ill. 215. Substantially the same facts were under consideration. In that case the defendant did not apply for writ of *certiorari.* In the present case the appellee did nothing except announce he would stand on his original returns. In such cases, if the department has reason to believe, and does believe, that a return is incorrect, it may correct the return according to its best judgment. There was ample evidence here to lead the department to believe that the return was incorrect and this justified it giving the notice. On the hearing the department endeavored to get the information from appellee, and upon his refusal to give complete information and walking out of the room, the department was justified, under the statute, in using its best judgment and information to determine the amount of sales. This the department did, and the amended return shows that inquiry was made from distributors as to the amount of purchases from which sales were made. The testimony shows that the investigator

was familiar with the kind of business under consideration. This is not the best evidence, but section 8 of the act provides that the department is not bound by the technical rules of evidence. Under the circumstances, there was some evidence that the return of appellee was incorrect and the basis of that finding was disclosed in the return to the writ of *certiorari.*

The statute provides that a return of a taxpayer, amended in such manner by the Department of Finance, is *prima facie* correct. This throws all the burden upon the taxpayer, and the tax is presumed to be legally levied unless the taxpayer overcomes the presumption. (*Nelson & Sons Co.* v. *Department of Finance,* 365 Ill. 401; *People* v. *Maxwell & Co.* 359 id. 570.) Although the evidence contained in the return is far from satisfactory, we are not at liberty to disregard it where the taxpayer offers no evidence to show that the amended return is incorrect, and there is some evidence in the record justifying the return made by the Department of Finance.

For the reason indicated the judgment of the circuit court of Peoria county is reversed and the cause is remanded, with directions to sustain the return made by the Department of Finance and to quash the writ of *certiorari.*

*Reversed and remanded, with directions.*