1008

## LEVERS v. ANDERSON.
### No. 2939.

Circuit Court of Appeals, Tenth Circuit.
March 12, 1946.
Rehearing Denied March '27, 1946.

See, also, 66 S.Ct. 72.

Jas. J. McNamara, of Clovis, N. M., for petitioner.

Arthur A. Alexander, Atty., Alcohol Tax Division, Office of Chief Counsel, Bureau of Internal Revenue, of Washington, D. C. (Herbert Borkland, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a petition to review three orders issued by Anderson, as District Supervisor,[1] in charge of the office of the Alcohol Tax Unit, Bureau of Internal Revenue, at Denver, Colorado. The orders were issued under the authority of §§ 4(b) and 4(e) (3), 27 U.S.C.A. §§ 204(b), (e) (3), of the

[1] Hereinafter referred to as the Supervisor.

Federal Alcohol Administration Act,[2] 27 U.S.C.A. §§ 201–211.

Forest E. Levers and Ray E. Levers, doing business as Levers Brothers, applied for, and, on March 21, 1936, received a wholesaler's basic permit. On October 1, 1941, Ray E. Levers died. On October 6, 1941, Forest E. Levers was appointed special administrator of the estate of Ray E. Levers, deceased, to administer the partnership assets. On October 10, 1941, Oran C. Dale, a son-in-law of Ray E. Levers, deceased, was appointed coadministrator with Forest E. Levers to administer the partnership assets. Thereafter, Forest E. Levers and Dale applied for an amended basic permit. Pursuant to such application, and on December 26, 1941, Wholesaler's Basic Permit No. 13-P-37 was issued to Forest E. Levers and Dale. On November 4, 1943, the Supervisor issued an order to show cause why Basic Permit No. 13-P-37 should not be annulled. It was served by registered mail.

On November 15, 1943, the probate court discharged Dale as coadministrator. On November 29, 1943, Forest E. Levers, as copartner and special administrator, applied for a new wholesaler's basic permit and for an importer's basic permit. On December 18, 1943, the Supervisor served on Forest E. Levers notices of contemplated denials of such applications.

As a part of the application for Basic Permit No. 13-P-37, Forest E. Levers filed a sworn statement containing the questions and answers set out in the margin.[3]

As a part of his applications of November 29, 1943, for a wholesaler's basic permit and an importer's basic permit, Forest E. Levers filed sworn statements containing substantially the same questions and answers.

The order to show cause charged that the permit had been secured by misrepresentation and concealment of material facts relating to the ownership or control of another corporation and to the ownership or control, in violation of §§ 5(a) and 5(b) of the Act, 27 U.S.C.A. §§ 205(a), (b), of outlets dispensing alcoholic beverages at retail. The ownership or control of such retail outlets was also assigned as the basis of the charge, made in each of the notices of contemplated denial, that the proposed business would not be maintained in conformity with Federal law.

The hearings in the three proceedings were consolidated. Forest E. Levers offered no evidence. The evidence introduced by the United States established that Levers Brothers dominated and controlled Standard Liquor Stores, Inc.,[4] which operated a number of retail establishments, although the majority stock of Standard was owned by Rolland E. Levers, a brother of Ray E. and Forest E. Levers; that Levers Brothers also so dominated and controlled a substantial number of retail dealers, that the latter were compelled to purchase substantially all of their requirements from Levers Brothers; that Ray E. Levers, deceased, executed, as guarantor, certain notes of Standard, running to the First National Bank of Roswell; that Levers Brothers guaranteed other indebtedness of retail dealers; that Levers Brothers paid for and obtained licenses for retail dealers; and that Levers Brothers owned interests in real estate used by retail dealers in conducting their business.

The Hearing Officer made his findings accordingly. The Supervisor approved the findings of the Hearing Officer, concluded that there was misrepresentation in the application for Basic Permit No. 13-P-37 and that the business proposed under the pending applications for a wholesaler's basic permit and an importer's basic permit would not be maintained in conformity with Fed-

[2] Hereinafter referred to as the Act.

[3] 3E. State whether applicant, either directly or indirectly, has actual or legal control over any other corporation, or is actually or legally controlled by any other corporation, whether such control is effected through stock ownership or in any other manner; and if so, state the extent and manner of such control, the name and address of such corporation, or corporations, together with the names and addresses of the officers, and directors of each corporation:

Have no connection with any corporation, directly or indirectly.

F. State whether applicant, or any of its officers, directors, principal stockholders, or any other person holding, or expected to hold, a substantial financial interest in the enterprise, holds any interest in any premises on which distilled spirits, wine, or malt beverages are sold at retail. If so, give particulars, including date such interest was acquired:

Do not hold any interest in any retail outlets.

[4] Hereinafter referred to as Standard.

eral law and regulations, and entered orders annulling Basic Permit No. 13-P-37 and denying the pending applications for permits.

27 U.S.C.A. § 204(a) (2) provides that a permit shall not be granted if the Secretary of the Treasury finds that the applicant is not likely to maintain operations thereunder "in conformity with Federal law." 27 U.S.C.A. § 204(e) (3) provides that a basic permit shall be annulled if the Secretary of the Treasury finds "that the permit was procured through fraud, or misrepresentation, or concealment of material fact."

■ The evidence fully warranted the Supervisor in finding that Basic Permit No. 13-P-37 was obtained through misrepresentation and concealment of material facts.

■ Counsel for petitioner contends that the Supervisor was without power to annul Basic Permit No. 13-P-37, or to refuse to grant the pending applications for a wholesaler's basic permit and an importer's basic permit. The contention is predicated on the notion that so to do would interfere with the due administration of the estate of Ray E. Levers, deceased, in the probate court. This contention is obviously without merit. An administrator who, as such, engages in the wholesale liquor business is not immune from the law regulating such business. He must conform with the provisions of the Act and lawful regulations promulgated thereunder and, if he violates such Act or regulations, is subject to the same legal consequences as if he were acting in his individual capacity.

■ Counsel for petitioner contends that the provisions of §§ 5(a) and 5(b) of the Act, the pertinent provisions of which are set out in the margin,[5] apply only to a wholesaler in one state who sells his products in interstate commerce to a retailer in another state, and that since, under §§ 61-508 and 61-521(b), N.M.St.Ann.1941, a New Mexico retail liquor dealer is forbidden to purchase liquors other than from a licensed New Mexico wholesaler, the practices of Levers Brothers and Forest E. Levers, with respect to retail liquor dealers in New Mexico, did not constitute violations of §§ 5(a) and 5(b) of the Act. It will be observed that §§ 5(a) and 5(b) are not limited to sales in interstate commerce but embrace practices which substantially restrain or prevent transactions in interstate commerce. We may take judicial notice of the fact that there are no distilleries in the state of New Mexico and that all distilled spirits are imported into the state in interstate commerce. Obviously, if one wholesaler in New Mexico so dominates a substantial

---

[5] Section 5 of the Act, 27 U.S.C.A. § 205, in part provides:

"It shall be unlawful for any person engaged in business as a * * * wholesaler, of distilled spirits, wine, or malt beverages, * * * directly or indirectly or through an affiliate:

"(a) Exclusive outlet. To require, by agreement or otherwise, that any retailer engaged in the sale of distilled spirits, wine, or malt beverages, purchase any such products from such person to the exclusion in whole or in part of distilled spirits, wine, or malt beverages sold or offered for sale by other persons in interstate or foreign commerce, * * * or if such person engages in such practice to such an extent as substantially to restrain or prevent transactions in interstate or foreign commerce in any such products, or if the direct effect of such requirement is to prevent, deter, hinder, or restrict other persons from selling or offering for sale any such products to such retailer in interstate or foreign commerce; or

"(b) 'Tied house.' To induce through any of the following means, any retailer, engaged in the sale of distilled spirits, wine, or malt beverages, to purchase any such products from such person to the exclusion in whole or in part of distilled spirits, wine, or malt beverages sold or offered for sale by other persons in interstate or foreign commerce, * * * or if such person engages in the practice of using such means, or any of them, to such an extent as substantially to restrain or prevent transactions in interstate or foreign commerce in any such products, or if the direct effect of such inducement is to prevent, deter, hinder, or restrict other persons from selling or offering for sale any such products to such retailer in interstate or foreign commerce: (1) by acquiring or holding (after the expiration of any existing license) any interest in any license with respect to the premises of the retailer; or (2) by acquiring any interest in real or personal property owned, occupied, or used by the retailer in the conduct of his business; * * * or (5) by guaranteeing any loan or the repayment of any financial obligation of the retailer; * * * or (7) by requiring the retailer to take and dispose of a certain quota of any of such products; * * *."

number of retail dealers that such retail dealers are compelled to purchase substantially all of their distilled spirits from such wholesaler, such practice will restrain and prevent transactions in such distilled spirits between other wholesalers in the state of New Mexico and distillers and distributors in other states.[6]

Moreover, it is not to be doubted that, in many instances, distilled spirits procured outside the state of New Mexico by wholesalers to fill prior orders of retail dealers are delivered to such retail dealers with only a temporary pause at the warehouse of the wholesaler which interrupts, but does not terminate, the interstate journey of the goods. In such a situation there is a practical continuity of movement from the distiller or distributor without the state to the retailer within the state of New Mexico.[7] The practices engaged in by Levers Brothers and Forest E. Levers would restrain such transactions in interstate commerce.

We conclude that the evidence justified the Supervisor in finding that Forest E. Levers, as administrator, would not maintain operations under the permits in conformity with Federal law.

Affirmed.

---

[6] See United States v. Frankfort Distilleries, Inc., 324 U.S. 293, 298, 65 S. Ct. 661; Montrose Lumber Co. v. United States, 10 Cir., 124 F.2d 573, 577, 578.

[7] See Walling v. Jacksonville Paper Co., 317 U.S. 564, 567, 568, 63 S.Ct. 332, 87 L.Ed. 460.