LEVERS v. BERKSHIRE, Deputy Commissioner of Internal Revenue, et al.

No. 3321.

Circuit Court of Appeals, Tenth Circuit.

Jan. 20, 1947.

690

Lake J. Frazier, of Roswell, N. M., for petitioner.

Robert C. Barnard, of Washington, D. C., for respondents.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

By this appeal, we are asked to review an order of the District Supervisor of the Alcohol Tax Unit denying petitioner's application for a wholesaler's basic permit to engage in the buying and selling of alcoholic beverages at wholesale. After hearing on the contemplated denial, the permit was denied on the ground that by reason of his business experience and trade connections, the petitioner is not likely to maintain operations in conformity with Federal law within the meaning of Section 4(a) (2) (B) of the Federal Alcohol Administration Act of August 29, 1935, 49 Stat. 977, 27 U.S.C.A. § 201 et seq.[1]

The background for this case is portrayed in prior litigation in this court, and a summarization of it is important to a consideration of the questions presented.

Petitioner, Forest E. Levers, has been engaged in the wholesale liquor business in

[1] 27 U.S.C.A. § 204. "Permits (a) Who entitled thereto. The following persons shall, on application therefor, be entitled to a basic permit: * * * (2) Any other person unless the Secretary of the Treasury finds * * * (B) that such person is, by reason of his business experience, financial standing, or trade connections, not likely to commence operations within a reasonable period or to maintain such operations in conformity with Federal law: * * *"

Roswell, New Mexico since 1933, operating under basic permit issued to Forest E. Levers and Ray E. Levers, doing business as Levers Brothers. When Ray Levers died in 1941, his brother Forest and son-in-law Oran C. Dale, were appointed special co-administrators of the partnership assets, and authorized to conduct the business of Levers Brothers. Upon application, a wholesale liquor dealer's basic permit was issued to the co-administrators on December 26, 1941. On November 4, 1943, the Supervisor issued an order to show cause why the basic permit issued to the co-administrator should not be annulled. On the 15th of November, Dale was discharged as co-administrator, and on the 29th of the same month, Forest Levers, in his capacity as sole administrator, made application for a new basic permit, stating that Dale had been discharged as co-administrator of the business. On the following December 18th, the District Supervisor served notice of contemplated denial of the application. It charged that the permit had been secured by misrepresentation and concealment of material facts relating to the ownership and control of another corporation owning and operating retail liquor outlets in violation of the so-called "Tied House" provisions of the Act. Sec. 5(a) (b), 27 U.S.C. A. § 205(a) (b). The ownership and control of these retail outlets was also assigned as the basis for the charge in the notice of contemplated denial that the proposed business would not be maintained in conformity with Federal law.

The related matters were consolidated for hearing before a designated hearing officer who, from the evidence, found that Levers Brothers dominated and controlled the Standard Liquor Stores, Inc., the operator of a number of retail liquor stores, through the ownership of a majority of its stock by Roland Levers, a brother of Ray and Forest Levers, and by execution as guarantors of certain notes of Standard Stores; that Levers Brothers also dominated and controlled other retail outlets by guaranteeing their indebtedness, by obtaining retail liquor dealer licenses, and owning an interest in the real estate used by such retail dealers in conducting their business.

The Supervisor approved these findings; annulled the existing basic permit for misrepresentations in the application, and denied the application for new permit on the stated grounds that the business would not be maintained in conformity with Federal law and regulations. On appeal, we held the evidence sufficient to support the findings and affirmed. Levers v. Anderson, 10 Cir., 153 F.2d 1008.

Meanwhile, on May 20, 1944, Ervin J. Levers, son of Forest Levers, while serving overseas in the armed forces, made application through an attorney-in-fact for a wholesale basic permit to engage in business at Roswell. The Supervisor gave notice of contemplated denial for the stated reason, inter alia, that the applicant was not the real party in interest, but that the business would actually be owned, managed and controlled by the father of applicant, Forest Levers, who at that time was involved in annulment proceedings; that by reason of these connections, he was not likely to operate the business in conformity with applicable Federal law. From the evidence introduced at a hearing, the hearing officer found that the son was receiving the major part of his financial resources from his father, and that the business was to be operated by one W. L. Lile, an employee of the applicant's father, who also managed a string of retail liquor stores; that the proposed business would be controlled, managed and operated by the applicant's father, Forest Levers, either as a substitute for Levers Brothers, or in connection therewith. The District Supervisor approved these findings and denied the application on the grounds, among others, that applicant was not likely to maintain the business in conformity with Federal law within the meaning of Section 4(a) (2) of the Act. On appeal, we held the facts sufficient to support these findings, and affirmed on November 2, 1945. Levers v. Berkshire, 10 Cir., 151 F.2d 935.

On November 27, 1945, Forest Levers, individually, made application for wholesaler's basic permit under consideration here. Notice of contemplated denial was issued, based on the following grounds: The past record of petitioner, resulting in

the prior annulment proceedings, is sufficient to show that he would not carry on business in conformity with Federal law; that the plan proposed by this application shows the same disregard for the provisions of Section 5(b) of the Act as existed in the operations of applicant under the annulled permit, in that at the time the application was filed, petitioner was furnishing space to W. L. Lile, who, while acting in his capacity as bookkeeper for Levers Brothers, was also operating four retail liquor stores. The notice also alleged misrepresentations and concealments of material facts in the application, in that petitioner failed to mention the annulment proceedings in answer to a question whether any permit held by applicant had ever been "suspended or revoked"; and that applicant falsely stated that he had never been arrested and charged with any violation of a state or Federal law relating to liquor.

A hearing on this contemplated denial developed the following facts: Standard Liquor Stores, Inc., was incorporated prior to the death of Ray Levers, for the purpose of operating certain retail liquor stores. Neither of the Levers Brothers ever appeared as officers, nor did they hold any stock, but the evidence shows that they were very active in the management and control of the corporation. Ninety-four percent of the stock was issued to Roland Levers, brother of Forest and Ray; apparently however, Roland never took any part in the management or business affairs of the corporation. Upon the death of Ray, Roland's stock was transferred to Oran C. Dale, son-in-law of Ray, who was also co-administrator of Levers Brothers. Dale became sole owner of Standard Stores when it was dissolved as a corporation in 1943, and he continued to operate it under the name of Standard Liquor Stores. When Dale entered the army in November, 1943, he executed a power of attorney authorizing C. W. Lile, an employee of Levers Brothers, to operate and manage the Standard Liquor Stores. With the exception of a few years, Lile had been an employee of Levers Brothers since 1934. When Dale returned from the army in November 1945, he revoked the power of attorney to Lile, and on November 15, 1945, after this application had been filed by Forest Levers, Lile's employment with Levers Brothers was terminated. During the two years that Lile managed the Standard Liquor Stores for Dale, he used office space furnished him by Levers Brothers at their warehouse, and all liquors for the stores were purchased exclusively from Levers Brothers.

Petitioner testified that the four retail stores owned by Standard Liquor Stores were nothing more than four out of 125 or 130 of his good accounts; that they were owned entirely by Dale, and he had no interest in them whatsoever other than good customers; that if requested to do so by the Alcohol Tax Unit as a condition for the issuance of a basic permit, he would make no further sales of liquor to Standard Stores; and that he had purchased a building site on which he intends to erect a new warehouse if granted the permit, and operate his business independently of any former connections. He stated that he sold to customers on open account, and on several named occasions the retail stores became so heavily indebted to him that he took chattel mortgages on the places of business as security; that the named stores were later sold to the Standard Liquor Stores, who paid the indebtedness to Levers Brothers. He denied, however, that he arranged for the sale of the stores, and again emphasized that his only interest was to collect the indebtedness. Testimony of two former owners of these retail stores, previously adduced in the annulment proceedings, was admitted as evidence over petitioner's objection. These witnesses stated in substance that when they became indebted to Levers Brothers, Forest Levers strenuously objected to the purchase of liquors from any other source than Levers Brothers, stating that if the store could not be "one hundred percent Levers store, he would close it up"; that later the stores were "turned over" to Forest Levers and Lile, who took over the cash register, and put their own additional liquor on the shelves. The stores were later leased or sold to the Standard Liquor Stores, and one witness testified that Forest Levers gave all instructions as

to how the business was to be run and how to fill out reports; that when the place was subsequently sold by Standard Liquor Stores to another party, Forest Levers conducted the negotiations, personally received the cash payment of $2400, and that no representative of Standard Liquor Stores was present during these transactions.

The evidence showed that in 1935, petitioner was convicted of contempt in the District Court of Chaves County, New Mexico, for intimidating a witness in a liquor violation prosecution. Documentary evidence also showed litigation between petitioner and the Office of Price Administration for selling certain liquors above ceiling price. A compromise settlement was made, a part of which has been paid.

After reviewing the foregoing facts, the Hearing Officer found that a discontinuance of the employment of Lile by Levers Brothers, the relinquishment of operation of the four retail stores by Lile to Dale, and the applicant's proposed offer not to rehire Lile or sell any liquors to the Standard Stores, was insufficient to establish good faith in view of his past record; that if granted a wholesale basic permit, the petitioner, by reason of his business experience and trade connections, is not likely to maintain operations in conformity with Federal law. The District Supervisor approved these findings and conclusions, denied the application for permit, and this appeal followed.

■■■ Petitioner's ' first contention is that he was not accorded his fundamental right to a fair, open and impartial hearing. It is of course true that the charge originated in, was investigated, prosecuted, heard, and decided by the agency charged with the administration of the Act. But this adjudicatory plan is encompassed within the Congressional enactment, is not repugnant to constitutional concepts, and the remedy for the evil, if it be called evil, does not therefore lie in the courts. The record discloses that the petitioner was given ample notice of the hearing, and appeared in person and by counsel. The hearing was conducted before an officer in accordance with the conventional rules of evidence and procedure. The petitioner was confronted with, and afforded an opportunity to cross-examine all witnesses, examine all documentary evidence, prepare his defense, and introduce countervailing evidence. Throughout the entire proceedings, the hearing officer was at pains to observe the fundamental precepts of fair play. Our examination of the entire record convinces us that the proceedings was not lacking in fundamental fairness.

The next contention is in substance that there was no competent evidence in the record tending to show that petitioner at any time owned, controlled or derived any benefits from retail outlets in violation of the "Tied House" provisions of the Act. It is said that in any event the order of denial is based not upon petitioner's present fitness to conduct a business in accordance with Federal law, but solely upon the situation existing prior to and at the time the application was filed. He complains that the District Supervisor gave no credence or consideration to his good reputation in the community as a citizen and businessman; to his record of cooperation with the Alcohol Tax Unit since 1933 when he first entered the business as a wholesale liquor dealer, or to his offers to discontinue any objectional practice in the event a permit is granted, such as his offer to change business locations; not to sell any merchandise to Standard Liquor Stores, or to rehire Lile or anyone connected with a retail outlet. It is pointed out that the sales by Levers Brothers to Standard Liquor Stores was a very small percentage of the total business, and that such sales, as well as the connection shown to exist, was no proof of Levers Brothers' interest in these retail outlets, beyond that of any other good customer.

By the Federal Alcohol Administration Act, the Congress has provided a comprehensive scheme for the regulation and administration of the manufacture and sale of intoxicating liquors. The responsibility for the administration and enforcement of the Act is committed to the Secretary of the Treasury, not the courts. The Sec-

694

retary is authorized to withhold a basic permit from any person who by reason of his business experience, financial standing or trade connections, is not likely to maintain such operations in conformity with Federal law. Section 4(a) (2). If the Secretary has reason to believe that the applicant is not entitled to a permit, he may, after notice and opportunity for hearing, deny it, stating the findings which are the basis for his order. Section 4(b). The Act specifically recognizes the evils of the so-called "Tied House" arrangements by making it unlawful for a wholesaler to acquire any interest in the retail business of another, the effect of which is to substantially restrain or prevent transactions in interstate commerce. Section 5(a) (b).

The Act grants a right of review to this court from an order of the Secretary denying an application with "Exclusive jurisdiction to affirm, modify, or set aside such order, in whole or in part," but the findings of the Secretary as to the facts, if supported by substantial evidence, are conclusive here. Section 4(h).

■ Undoubtedly, in determining whether an applicant, if granted a basic permit, would likely maintain and operate his business in conformity with Federal law, the Secretary may take into consideration the applicant's record with respect to his operations under other basic permits. From these facts and circumstances, it is for the Secretary to determine whether the purposes of the Act would be effectuated by granting a permit to any particular applicant.

■ The Supervisor approved the findings of the Hearing Officer to the effect that the applicant's failure to mention the annulment proceedings in answer to the question whether a Federal permit issued to him had ever been "suspended or revoked," although not false, was a concealment of a material fact. It is true that no basic permit held by applicant had ever been "suspended or revoked," but one had been annulled by the Supervisor, and his order was then in process of judicial review. It seems fair, therefore, to say that the answer to the question was not false, and we seriously doubt whether it was a concealment of a material fact. Furthermore, the record of applicant's contempt proceedings, resulting in a fine, and his controversy with the Office of Price Administration, do not constitute a false answer to the question whether applicant had ever been arrested and charged with any state or Federal law relating to liquor. The Government's emphasis on these answers, as the basis for denial of the basic permit, tends to weaken, rather than strengthen its case. Nor does it lend itself to administrative impartiality.

■ But we should not overturn the order of denial, unless we can say from the whole record that the Supervisor acted arbitrarily or capriciously, without warrant in fact or reasonable basis in law. Levers v. Anderson, 10 Cir., 153 F.2d 1008, and cases cited.

■ A basic permit issued to the petitioner here as co-administrator of Levers Brothers, has been annulled, and an application for a new permit to him as sole administrator of the partnership assets has been denied, on the grounds that by reason of his consistent disregard for the "Tied House" provisions of the Act, he was not likely to conduct the business in conformity with Federal law. We have approved the findings upon which those conclusions are based, and they stand as irrefutable evidence in this case. When viewed in the light of the course of conduct portrayed on this record, we cannot say as a matter of law that petitioner's manifestations of future good conduct are sufficient to overcome the onus of his past transgressions. It follows that the order of the Supervisor should be and is affirmed.