HUBER PONTIAC, INC., a Delaware Corporation, Plaintiff,

v.

Robert H. ALLPHIN, Individually and as Director of Revenue of the State of Illinois, Defendant.

No. S–Civ–76–0023.

United States District Court, S. D. Illinois, S. D.

May 2, 1977.

William S. Hanley, Springfield, Ill., for plaintiff.

William J. Scott, Atty. Gen., Springfield, Ill., for defendant; David G. Lichtenstein, Asst. Atty. Gen., Springfield, Ill., of counsel.

## MEMORANDUM

ACKERMAN, District Judge.

Plaintiff, Huber Pontiac, Inc., brings this action against defendant Allphin in his individual and official capacities, challenging under 42 U.S.C. § 1983, the hearing procedures by which it was determined that a number of station wagons used by plaintiff as demonstrators and as courtesy cars for plaintiff's customers, were subject to the Illinois Use Tax, Ill.Rev.Stat. Chap. 120, §§ 439.1 et seq. Jurisdiction is based on 28 U.S.C. § 1343.

Defendant now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff on the other hand has filed a motion for partial summary judgment under F.R.Civ.P. 56(a) and (d). Since the court has considered matters outside the pleadings, these motions will be treated as cross motions for summary judgment under F.R.Civ.P. 56.

The facts are not in dispute. Plaintiff owns and operates an automobile dealership near Springfield, Illinois. Defendant Allphin is the director of the Department of Revenue of the State of Illinois. On October 11, 1974, plaintiff received notice of an alleged tax deficiency in the payment of Illinois Use Tax. Plaintiff sought and was granted a hearing before the Department of Revenue.

On January 3, 1975, a hearing was conducted in Springfield by an attorney appointed by the defendant pursuant to Hearing Rule 2–1 of the Rules of the Department of Revenue. Over the objection of plaintiff's counsel, the hearing officer pursuant to Hearing Rule 2–4, quoted in full below,[1] both presided at the hearing and presented the case for the Department.

During the hearing, the hearing officer called witnesses on behalf of the Department, offered, introduced, and received exhibits, entered objections to the questions of plaintiff's counsel and cross-examined plaintiff's witnesses. During a recess, the hearing officer met with one of the witnesses for the Department and prepared him for re-direct testimony.

Later, the hearing was recessed to be reconvened on April 11, 1975. At that time, one of the witnesses for the Department, called by plaintiff as an adverse witness, revealed that during the three month recess the witness had conferred with the hearing officer concerning the credibility of one of plaintiff's chief witnesses. At the conclusion of the hearing plaintiff's counsel objected that the hearing officer was neither

1. Hearing Rule 2–4 of the Rules and Regulations of the Department of Revenue of the State of Illinois provides:

    The hearing officer shall preside over the hearing. The hearing officer shall also present the Department's case, cross examine witnesses who testify for others in the proceedings and otherwise represent the Department in the proceedings, unless the Director authorizes some officer or employee of the Department other than the hearing officer, or (with the consent of the Attorney General) an Assistant Attorney General, to represent the Department at the hearing other than as the presiding officer.

impartial nor unbiased and that plaintiff's due process rights had been violated.

Plaintiff filed a brief citing his objections and seeking a new hearing in which separate persons would preside and present the Department's case. On January 9, 1976, the Director issued a final assessment upholding the original tax liability and penalties. No reason for the decision was given nor was there any indication of the evidence relied upon to reach the decision presented.

Plaintiff presents a threefold attack on the procedure utilized to determine his tax liability. First, he contends that Hearing Rule 2–4 constitutes a *per se* violation of his right to due process of law in that by allowing the same individual to preside at the hearing and to present the case for the Department requires *ex parte* contacts with witnesses and destroys the impartiality of the hearing officer. In short, that this procedure creates an unacceptable risk of bias in the hearing officer. Secondly, plaintiff asserts that the Director's practice of announcing his decision without disclosing either the evidence relied upon or the reasoning used in reaching his final decision is also a *per se* violation of due process. Finally, plaintiff argues that even if it is determined that the procedures of the Department are not *per se* violations of constitutional rights, the procedures as applied violated plaintiff's right to due process since there were *ex parte* contacts between witnesses and the hearing officer.

Concerning plaintiff's first issue, whether Hearing Rule 2–4 constitutes a *per se* violation of plaintiff's right to due process of law presents an issue of the propriety of mixing the prosecutorial and adjudicative functions in an administrative hearing, the courts of Illinois have reached varying conclusions. Similar provisions have been challenged numerous times and often upheld. See, *Department of Finance v. Gandolfi*, 375 Ill. 237, 30 N.E.2d 737 (1940), *Department of Finance v. Cohen*, 369 Ill. 510, 17 N.E.2d 327 (1938), *Anderson v. Department of Finance*, 370 Ill. 225, 18 N.E.2d 206 (1938), *Rentra Liquor Dealers, Inc. v. De-*

*partment of Revenue*, 9 Ill.App.3d 1063, 293 N.E.2d 388 (1st Dist. 1973), and *Sunderstrand Corporation v. Department of Revenue*, 34 Ill.App.3d 694, 339 N.E.2d 351 (2d Dist. 1975). In one case, *Murphy v. Cuesta, Rey & Co.*, 381 Ill. 162, 45 N.E.2d 26 (1942), the Illinois Supreme Court specifically upheld a procedure which allowed a representative of the Department of Labor to prosecute an employer for unemployment taxes due and to hear and determine all controverted issues. The rationale for this decision was that the hearing officer only made a recommendation, that the Director or the courts made the final decision.

On the other hand, the Illinois Appellate Court for the Fifth District in reviewing the decision of the East St. Louis Board of Fire and Police Commissioners discharging a police officer, found that the Board had acted as a prosecutor and judge and ". . . that never, ever, can there be a merger of the prosecutorial and judicial functions in a court or in an administrative body exercising quasi-judicial functions." *Phillips v. The Board of Fire and Police Commissioners*, 24 Ill.App.3d 242, 244, 320 N.E.2d 355, 356 (5th Dist. 1974).

The cited Illinois cases are of course not binding precedent for this Court. Normally they present strong persuasive authority. In this case, however, the persuasive effect of these cases is diminished by their age and the intervening decisions of the United States Supreme Court on due process issues. See, e.g., *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) and *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Further, I believe the recent Supreme Court decision in *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) to be particularly relevant.

In that case the United States Supreme Court held that the combination of investigative and adjudicative functions in a single board does not, without more, constitute a due process violation as creating an unconstitutional risk of bias. Clearly, the *Withrow* case is factually distinguishable from this case. It discusses the combina-

tion of investigative and adjudicative functions within a single agency. This case attacks the combination of prosecutorial and adjudicative functions in a single individual. However, the language of that case is instructive. In *Withrow, supra,* at 46–47, 95 S.Ct. at 1464, the Court said:

> Concededly, a "fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison,* 349 U.S. 133, 136, [75 S.Ct. 623, 655, 99 L.Ed. 942] (1955). This applies to administrative agencies which adjudicate as well as to courts. *Gibson v. Berryhill,* 411 U.S. 564, 579, [93 S.Ct. 1689, 1698, 36 L.Ed.2d 488] (1973). Not only is a biased decisionmaker constitutionally unacceptable but "our system of law has always endeavored to prevent even the probability of unfairness." *In re Murchison, supra,* [349 U.S.] at 136, [75 S.Ct. 623]; cf. *Tumey v. Ohio,* 273 U.S. 510, 532, [47 S.Ct. 437, 444, 71 L.Ed. 749] (1927). In pursuit of this end, various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable. Among these cases are those in which the adjudicator has a pecuniary interest in the outcome (footnote omitted) and in which he has been the target of personal abuse or criticism from the party before him. (Footnote omitted).

The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

Research discloses only one Federal case [2] specifically dealing with the combination of prosecutorial and adjudicative functions and I feel that the test delineated in *Withrow* is appropriate here.

Under the Hearing Rules, the hearing officer presides, presents the Department's case, cross-examines witnesses,[3] and rules on objections and on the admissibility of evidence although the evidence is "placed in the record so that the correctness or incorrectness of the hearing officer's ruling may be passed on by the Director or by a reviewing court."[4] When the hearing is completed, pursuant to Hearing Rule 2–10,[5] the hearing officer prepares a report, the full record of the hearing and recommendations for the Director's decision.[6]

---

**2.** *Hoberman v. Lock Haven Hospital,* 377 F.Supp. 1178 (M.D.Pa.1974) which held in dicta that "[i]t is well settled that a tribunal which combines the functions of prosecutor and judge into one body does not meet the due process requirement of basic fairness."

**3.** Hearing Rule 2–1.

**4.** Hearing Rule 2–5.

**5.** Hearing Rule 2–10 provides:

> 10. When the hearing is completed, the hearing officer shall review the record of the proceedings and make a report thereon to the Director, accompanying the report with the full record of the hearing and with recommendations for the Director's assistance. *However, the Director is not bound by such recommendations since the final administrative decisions under the Act which must be made by the Department and which involve*

*the exercise of discretion must be made for the Department by the Director thereof.* (Emphasis in original.)

**6.** The fact that the hearing officer prepares "recommendations" for the Director's decision rather than making the decision himself provided the basis for the 1942 Illinois Supreme Court ruling in *Murphy v. Cuesta, Rey & Co.,* 381 Ill. 162, 45 N.E.2d 26 (1942) that a similar procedure did not violate the "constitutional rights of appellant to a fair and impartial hearing . . . ." *Murphy,* at 166–67, 45 N.E.2d at 28. I do not believe this distinction valid in this case, in light of the fact that the decision of the Director was indicated solely by a notice of tax liability lacking any indication of the Director's reasoning or the evidence relied upon to reach the final decision. This of course is plaintiff's second objection to the procedure under scrutiny and may violate due process in and of itself.

Under these circumstances even granting great weight to the presumption of honesty and integrity due the hearing officer in these matters, I believe the combination of functions here creates an unconstitutional risk of bias. The hearing officer in preparing to present the Department's case must become intimately familiar with its facts. In presenting the case he must act as an advocate and as such, he must seek to present the Department's case in the best possible light for the Department. The risk of bias is clearly recognized by the Department rules themselves where, although the hearing officer rules on the admissibility of evidence, rejected evidence is placed in the record for the Director and reviewing courts.

However, this rule alone is not sufficient. Through the *ex parte* interviews necessary to prepare the Department's witnesses not only does the hearing officer learn the strengths and weaknesses of the case he must present, but more than likely he becomes psychologically predisposed [7] toward one result before he has heard any witnesses for the taxpayer or the cross-examination of the Department witnesses. Once this predisposition has been achieved, the hearing officer as an advocate may well use his position as a hearing officer to seek to create a record which bolsters his decision. Further, in pursuit of the laudable goal of efficiency he may seek to limit testimony and evidence which he has already determined to be irrelevant.

In my opinion, under these circumstances, a "realistic appraisal of psychological tendencies and human weaknesses," *Withrow, supra,* 421 U.S. at 47, 95 S.Ct. at 1464, suggests that in this situation conferring both adjudicative and prosecutorial functions on the same individual poses "such a

risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented. *Withrow, supra,* at 47, 95 S.Ct. at 1464. Having reached this conclusion, it is unnecessary to deal with plaintiff's remaining points.

In holding that the procedure under scrutiny creates an unconstitutional risk of bias, I realize that my ruling is at variance with the rulings of the Illinois Supreme Court. See, e.g., *Murphy v. Cuesta, Rey & Co., supra.* This being the case it appears that the defendant's argument concerning Allphin's personal liability is well taken.

A state official in pursuit of his duties cannot be "charged with predicting the future course of constitutional law," *Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967) and in my opinion where it is established that he acted in accord with a procedure held not to violate the Constitution by the highest court in the state, cannot be held individually liable in damages under 42 U.S.C. § 1983. See, *Dacey v. New York County Lawyers' Association,* 423 F.2d 188 (2d Cir. 1969), *cert. denied* 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970), *Haines v. Kerner,* 492 F.2d 937 (7th Cir. 1974), *Briscoe v. Kusper,* 435 F.2d 1046 (7th Cir. 1970), and *Skinner v. Spellman,* 480 F.2d 539 (4th Cir. 1973). This of course does not render injunctive or declaratory relief any less appropriate. *Rowley v. McMillan,* 502 F.2d 1326 (4th Cir. 1974).

Under these circumstances, it seems to me that as a matter of law defendant Allphin cannot be held individually liable. To afford plaintiff an opportunity if desired to submit additional authority on this point, I withhold final decision on this question.

Plaintiff's motion for partial summary judgment is granted and defendant's mo-

---

See, *Goldberg v. Kelly,* 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

**7.** As the Secretary of Labor's Committee on Administrative Procedure said in 1940:

A genuinely impartial hearing, conducted with critical detachment, is psychologically improbable if not impossible, when the presiding officer has at once the responsibility of

appraising the strength of the case and of seeking to make it as strong as possible. Secretary of Labor's Committee on Administrative Procedure, The Immigration and Naturalization Service, 77 (Mimeo.1940), as quoted in *Wong Yang Sung v. McGrath,* 339 U.S. 33, 44 [, 70 S.Ct. 445, 94 L.Ed. 616] (1950).

tion for summary judgment is reserved as to defendant Allphin in his individual capacity and denied in all other respects.