Bernard ROGERS, O.D., Appellant,

v.

TEXAS OPTOMETRY BOARD, Appellee.

No. 20252.

Court of Civil Appeals of Texas,
Dallas.

Aug. 13, 1980.

Rehearing Denied Nov. 7, 1980.

Douglas S. Lang, Gardere, Wynne & Jaffe, Dallas, for appellant.

Carla Cox, Asst. Atty. Gen., Austin, for appellee.

Before GUITTARD, C. J., and AKIN and STOREY, JJ.

GUITTARD, Chief Justice.

Bernard Rogers appealed to the district court from an order of the Texas Optometry Board suspending his license to practice optometry on the ground, among others, that he was denied a fair hearing before the Board in that two members of the Board, who did not participate in the decision, personally investigated the case and gave the only testimony against him. We reverse on the ground that this procedure was so fundamentally unfair under the circumstances

of this case as to be a denial of procedural due process of law.

The proceeding in the district court was an appeal on the record before the Board under Section 19 of the Administrative Procedure and Texas Register Act, Tex.Rev. Civ.Stat.Ann. art. 6252–13a (Vernon Supp. 1980). The record before the Board shows that the only evidence presented against appellant was the testimony of two members of the Board, Dr. John B. Bowen and Dr. Richard Friedman. Their testimony showed that on November 7, 1977, Dr. Bowen, a resident of Lubbock, was in Dallas on business unrelated to his official duties as a member of the Board. During a lunch break, he and Dr. Friedman, who resided in Dallas, decided to make a personal investigation of appellant. Dr. Bowen assumed a disguise and in company with Dr. Friedman, visited appellant's office. Dr. Bowen represented to appellant that his name was Joe Berry and that he was moving to Dallas from Oklahoma. He requested an examination by appellant, who complied and wrote a prescription for corrective lenses. According to Dr. Bowen, appellant failed to perform certain eye–examination steps required by section 5.12 of the Texas Optometry Act, Tex.Rev.Civ.Stat.Ann. art. 4552–5.-12 (Vernon 1976). Dr. Friedman testified only with respect to the general circumstances of the visit to appellant's office.

As a result of this investigation, Dr. Bowen filed a complaint against appellant on the ground of incompetence. The matter then came on for hearing before the Board, and the only witnesses against appellant were Dr. Bowen and Dr. Friedman. The testimony shows that investigations are normally conducted by investigators employed by the Board rather than by members. Dr. Bowen explained that the reason he and Dr. Friedman undertook the investigation was because the Board had received complaints concerning appellant and this was the "easiest way" to get the investigation done.

Appellant testified in his own defense and denied that he had failed to make a complete examination on the occasion in question. Neither Dr. Bowen nor Dr. Friedman participated in the decision to suspend his license. Another member of the Board was present at the hearing, but refrained from voting because of kinship with appellant. Consequently, only three of the six members remained to decide the case.[1] These three voted to suspend appellant's license for one month on the ground of incompetence. On appeal to the district court, the order of the Board was affirmed.

■ Appellant contended in the district court, and also here, that he was denied due process of law before the Board because of the intertwining of its investigative, prosecutorial and judicial functions. In response, the attorney general contends that the Board's order is supported by *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). *Withrow* stands for the rule that the combination of investigative and adjudicative functions in an administrative agency does not, without more, create an unconstitutional risk of bias in an administrative adjudication, but it recognizes that such a risk may be shown in special circumstances. The court had before it a Wisconsin statute empowering a physicians' examining board to make an investigation to determine whether probable cause existed to institute criminal action for revocation of a physician's license and also to suspend the license temporarily upon a determination that the licensee had been guilty of a violation. The court pointed out that a determination of probable cause and determination of guilt were separate functions, and that a finding of probable cause did not necessarily prejudice the Board on a later determination of guilt. The court also observed that the Board had organized itself internally to minimize the risks arising from combining investigation and adjudication. 421 U.S. at 54, n. 20, 95 S.Ct. at 1468, n. 20. Thus, the court held that the facts

1. No contention is made that the Board lacked the quorum of four members required by section 2.05(c) of the Texas Optometry Act.

shown did not meet the test of unconstitutional risk of bias in administrative adjudication, which was stated as follows:

It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

The court was careful to note that its holding did not "preclude a court from determining from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high."

We hold that to have members of the Board sit in judgment with their fellows one day and appear as investigators and witnesses before them the next creates an intolerable risk of unfairness under the circumstances shown here. This case is not like *Withrow*, where the Board made an initial determination of probable cause based on a staff investigation and presentation. Here, the only witnesses to the controlling facts were the appellant and two members of the Board, and the remaining members were required to decide the case on the basis of the credibility of the two investigating members.

Although we presume that all members of the Board acted in good faith, "a realistic appraisal of psychological tendencies and human weakness," as required by *Withrow*, leads to the conclusion that this procedure poses an unreasonable risk of bias. The members of the Board, in order to perform their statutory functions, are required to transact its business in meetings. Article 4552, § 2.05. It is important for them to develop a close working relationship and to give consideration to each other's views. In this context it is obviously difficult for members of the Board to reach a completely objective decision when the principal witnesses are other members of the same body and the issue presented involves their credibility. This unfairness is especially apparent in a case such as this, in which the agency's decision on the facts is reviewable only for the purpose of determining whether its findings are supported by substantial evidence.[2]

The problem is not cured by letting the members take turns as witnesses and as adjudicators. *See Wall v. American Optometric Ass'n, Inc.*, 379 F.Supp. 175, 189 (N.D.Ga.1974). Voluntary nonparticipation of the two members who appeared as witnesses did not cure the unfairness, but contributed to it because the number of members remaining to deliberate on the decision was reduced.

Although no case similar to the present has been cited to us or disclosed by our research, a number of federal decisions since *Withrow* illustrate the kind of "special facts and circumstances" that may present an intolerably high risk of unfair adjudication. In *Staton v. Mayes*, 552 F.2d 908, 913–14 (10th Cir. 1977), school board members made statements indicating bias before hearing evidence on charges against the superintendent. In *Gonzales v. McEwen*, 438 F.Supp. 460, 464–65 (C.D.Cal.1977), a student expulsion case, the school board's bias was shown by contacts by members of the board with the superintendent and the relationship of members to a lawyer who presented the case against the students at a hearing and also represented the members individually. In *Huber Pontiac, Inc. v. Allphin*, 431 F.Supp. 1168, 1171–72 (S.D.Ill. 1977), *vacated on other grounds*, 585 F.2d 817 (7th Cir. 1978), the hearing officer in a tax case had responsibility to preside at the hearing, present the state's case, cross-examine witnesses, rule on admissibility of evidence, and make recommendations for the final decision. In *National Rifle Ass'n v. United States Postal Service*, 107 F.Supp.

---

**2.** Appellant also argues that the Administrative Procedure Act denies him equal protection of the laws in failing to afford optometrists the right of trial de novo provided for other professional licensees, but we do not reach that question, since we assume, without deciding, that the substantial evidence rule governs.

88, 92–94 (D.C.), the same official who had initially rejected an application for a special postal classification also had responsibility to reconsider it. In all of these cases due process was found lacking. An earlier case illustrating the same principle is *Amos Treat & Co. v. Securities and Exchange Comm'n*, 306 F.2d 260, 263–67 (D.C.Cir. 1962), in which a member of the commission was held to be disqualified because before his appointment he had served as a director of the staff which had responsibility to make the investigation which led to the adjudication.

We hold that the risk of unfairness is intolerably high under the special facts and circumstances of this case. Consequently, we reverse the judgment of the district court and vacate the order of the Board.

Reversed and rendered.

AKIN, Justice, dissenting.

I cannot agree that the procedure employed in this case by the Texas Optometry Board was so unfair as to be a denial of due process of law. Accordingly, I dissent.

The relevant facts are undisputed and are accurately set forth in the majority opinion, with the exception of certain omissions. The evidence also shows that the Board had no investigators employed in the Dallas–Fort Worth area and that the subcommittee on malpractice, of which Dr. Bowen and Dr. Friedman were members, had received many complaints concerning appellant. Accordingly, while at a meeting in Dallas, Dr. Bowen and Dr. Friedman decided to investigate the complaints previously made to the Board.

The crucial question presented is whether due process of law was violated because Drs. Bowen and Friedman, two board members, investigated appellant and later testified against him before the Board, although both recused themselves from the Board's decision. The majority holds that to have members of the Board appear as witnesses is fundamentally unfair, particularly where the credibility of the Board member witnesses was crucial to the Board's decision. With this I cannot agree. Although the majority states that presumably all members of the Board acted in good faith, implicit in its holding is the fact that the Board could not act in good faith because the two witnesses were also Board members. I see no fundamental unfairness here since neither Board member participated in the Board's decision.

The holding of the majority extends due process far beyond any precedent. In *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), a unanimous Supreme Court held that the combination of investigative and adjudicative functions in an administrative agency, without more, does not violate due process. The Supreme Court noted that to show a denial of due process, absent circumstances not present here, is a difficult matter to establish. For example, the Court observed that the proponent must overcome a presumption that the adjudicators acted honestly and with integrity. Additionally, according to the Supreme Court, the proponent "must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Id.* at 47, 95 S.Ct. at 1464.

Applying these stringent requirements to the facts here demonstrates that appellant was not denied due process by the Board. Both Dr. Bowen and Dr. Friedman abstained from voting to reprimand appellant and thus, neither were adjudicators. The majority concludes, however, that because Dr. Bowen and Dr. Friedman were Board members as well as witnesses, the remaining Board members could not render a fair decision. This of course is contrary to the presumption enunciated in *Withrow* that the voting Board members are presumed to act honestly and with integrity. Indeed, the majority in order to reach its conclusion has applied the opposite presumption that the Board members did not, and could not, act with honesty and integrity. This pre-

sumption is, of course, directly contrary to the Supreme Court's language in *Withrow*.

In *Withrow*, the Supreme Court found no violation of due process where the Wisconsin Board of Medical Examiners acted in both an investigatory and an adjudicatory capacity. The Board in that case conducted the investigation as a whole and then found that there was probable cause for Dr. Withrow's license to be suspended. In that case, the Board members who actually made the investigation also sat as adjudicators on the Board. Here, the investigating Board members merely testified as witnesses but declined to sit as adjudicators. In my view and in the view of the Supreme Court, if an administrative agency's investigation does not so prejudice them in a subsequent adjudication in the same matter so as to be a denial of due process, there is no inherent denial of due process here. Accordingly, I would hold that appellant has not shown a violation of due process.

The assertion by appellant that the proceedings here before the Board amounted to a deprivation of due process of law was also rejected by a unanimous Supreme Court in *Federal Trade Commission v. Cement Institute*, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948). In that case, the Federal Trade Commission had made a prior ex parte investigation of the parties, and based upon that investigation, some members testified before congressional committees concerning the legality of the pricing system of the Cement Institute. Prior to the complaint being filed and prior to a hearing thereon, some of the members of the Commission had disclosed their opinion that the system was illegal. Based upon these facts the Cement Institute contended that it was denied due process because the Board was biased as a result of its prior ex parte investigation. The Supreme Court rejected this argument on the ground that even if the Commission had entertained views adverse to the Cement Institute as a result of the ex parte investigation did not mean that the minds of the Commission members were irrevocably closed on the subject of the legality of the Cement Institute's pricing practices. The Court reasoned that to

hold otherwise would defeat the congressional purposes for enacting the Trade Commission Act because had the entire membership been disqualified because of the Commission's prior investigation, the complaint before the Commission could not have been acted upon by the Commission or any other government agency. *Id.* at 701, 68 S.Ct. at 808.

Applying this rationale to the present case, the holding of the majority frustrates public policy. The Board is charged by the legislature with the responsibility of protecting the public against incompetent and careless practitioners of optometry. Tex. Rev.Civ.Stat.Ann. art. 4552–5.13 (Vernon 1976). By holding that it is a violation of due process for a Board member to investigate a complaint and to testify before the Board seriously hampers this legislative mandate. In my view, Board members have a duty to investigate complaints and to bring these complaints to the Board's attention, and it is immaterial whether the Board personally conducts the investigations or hires employees to investigate for it. I see no violation of due process in this procedure, even if the Board members who investigated and testified also acted as adjudicators, as in *Withrow* and *Cement Institute*. Accordingly, I am compelled to dissent.

## ON MOTION FOR REHEARING

### GUITTARD, Chief Justice.

In its motion for rehearing, the board asserts that our holding is contrary to the decision of the Supreme Court of Texas in *Firemen's and Policemen's Civil Service Commission v. Hamman*, 404 S.W.2d 308 (Tex.1966), in which the participation of a member of the commission in the investigation was held not to disqualify him from sitting with other members at the hearing at which the officer was suspended. The court does not state whether the investigating commissioner also testified at the hearing, but the opinion of the court of civil appeals shows that he did. *Firemen's and Policemen's Civil Service Commission v.*

*Hamman*, 393 S.W.2d 406, 407 (Tex.Civ. App.–Beaumont 1965), aff'd 404 S.W.2d 308 (Tex.1966). Neither opinion indicates what his testimony was, and, since the supreme court discusses his participation in the investigation and in the decision, but does not even mention his testimony, we gather that it was not regarded as crucial to the commission's decision. Neither court mentions the question of risk of bias, later adopted as the test of a denial of due process in *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975).

We do not hold that in every case in which a member of an administrative tribunal participates in an investigation and also appears as a witness before it, all members of the tribunal are necessarily disqualified. Neither do we hold that decisions of such a tribunal cannot properly be based on the testimony of its own investigative employees, especially where the agency has organized itself internally to minimize the risk of bias, as was the case in *Withrow*. *Id.* at 54, n. 20, 95 S.Ct. at 1468, n. 20. In *Hamman*, the Supreme Court of Texas expressly recognized that in some circumstances a combination of investigatory and adjudicatory functions may constitute a denial of due process of law. 404 S.W.2d at 312. We hold only that the peculiar circumstances of this case establish an intolerable risk of bias, and therefore, a denial of due process.

■ The Board argues that since two members of the board are the only witnesses available to support the complaint against appellant and the board is the only tribunal available to hear it, we should apply the "rule of necessity," which is that disqualification of the members of an administrative tribunal will not be permitted to destroy the only agency with power to take action in the case. It cites *Brinkley v. Hassig*, 83 F.2d 351 (10th Cir. 1936), and other cases. In *Brinkley* it appears that the unprofessional actions which prompted the complaint against the physician in question were so public and so notorious that they were well known to all members of the licensing board before the complaint was made. The court observed that if the power of the board could not be exercised because of the prejudice of its members, then any physician who commits an offense so grave that it shocks every right–thinking person would have an irrevocable license to practice if he could only get the news of his offense to the board in advance. *Id.* at 357.

No such situation is shown here. If appellant was engaging in unprofessional conduct, the board had staff investigators who could have observed it and served as witnesses without any necessity for members of the board to step aside as adjudicators and take upon themselves the role of investigators and witnesses. We adhere to the view that this irregular procedure was a denial of due process under the circumstances.

Motion overruled.

AKIN, J., dissents.

AKIN, Justice, dissenting.

In its motion for rehearing, the Board has called our attention to our supreme court's decision in *Firemen's and Policemen's Civil Service Commission v. Hamman*, 404 S.W.2d 308 (Tex.1966), which held that no violation of due process existed where, of three members of the commission ordering an officer's suspension, one had participated in the investigation of the acts upon which the suspension was based. Thus, the supreme court found no violation of due process where a member of the commission performed both investigatory and adjudicatory functions in an administrative proceeding–a more compelling situation for invoking due process than the situation here, since the members who performed investigatory functions disqualified themselves as adjudicators. Consequently, in my view, the majority's holding that the fact situation here is a *per se* violation of due process merely because two members of the Board testified against appellant is in direct conflict with the opinion of the supreme court in *Hamman*. As the supreme court stated in *Hamman*:

> We further hold that Hamman was not denied procedural due process of law in

the fact that one of the three members of the Commission participated in the investigation of the acts supporting the six–months suspension ordered by the Commission. It is argued by Hamman that participation of a Commission member in both the investigatory and decisional phases of an administrative proceeding is a disqualifying fact and imposes a taint of illegality upon the proceeding which, in turn, destroys the presumption of validity of the order of the Commission. Stated otherwise, that since the order here will be upheld by the courts in a substantial evidence trial if it has support in the evidence, regardless of the existence of contrary evidence, Hamman has not under such circumstances been afforded procedural due process of law.

.    .    .    .    .

In recently denying the application for writ of error in *Texas State Board of Dental Examiners v. Fieldsmith*, Tex.Civ. App., 386 S.W.2d 305 (writ ref. n. r. e. 1965), an appeal governed by the substantial evidence rule, we considered the problem of a statutory combination of investigatory and adjudicatory functions in an administrative agency. There an order of the Board of Dental Examiners revoking a license to practice dentistry was assailed as invalid because of denial of due process in the fact that a member of the Board who participated in the investigation which resulted in the filing of the complaint also participated in the hearing and in the vote to revoke the license. We were in agreement with the holding of the Court of Civil Appeals that there was not a denial of procedural due process of law under the circumstances there shown. The Court emphasized the statutory duties of the Board, including those of investigation, in administering the statutes regulating the practice of dentistry and the fact that the statute does not disqualify a Board member who aids in an investigation. The circumstances here are analogous. See also *Farb v. State Banking Board*, Tex.Civ. App., 343 S.W.2d 508 (writ ref. 1961); cf. *Pangburn v. CAB*, 311 F.2d 349 (1st Cir. 1962); *Belizaro v. Zimmerman*, 200 F.2d 282 (3rd Cir. 1952); *Levers v. Berkshire*, 159 F.2d 689 (10th Cir. 1947); *Brinkley v. Hassig*, 83 F.2d 351 (10th Cir. 1936).

.    .    .    .    .

we hold that there has been no denial here. 404 S.W.2d at 312.

The majority opinion on motion for rehearing attempts to distinguish *Hamman* on the ground that since neither the opinion of the supreme court nor the opinion of the court of civil appeals in *Hamman* states what the testimony of the commission member was, the supreme court did not regard the testimony of the commission member crucial to the commission's decision. In my view, this is a distinction without a difference and is not a basis to refuse to follow supreme court authority. *See Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex.1964).

Although the supreme court in *Hamman* recognized that there may be some circumstances under which the combination of investigatory and adjudicatory functions would be a denial of due process, it also indicated that at least some evidence must exist in the record to show that the adjudicators (here the non–testifying Board members) were not impartial but rather biased and partisan. 404 S.W.2d at 312. In our case no such evidence exists.

I agree with the Board's contention on rehearing that if the majority's opinion stands, the due process issue could be raised where the Board or an agency merely uses its own employees to conduct investigations and later testify before it. This is true because a "risk of bias" could also exist with the Board's employees who of necessity must work closely and confidentially with the Board. Thus, the logical extension of the majority's "risk of bias" reasoning could severely curtail state agencies in the performance of their statutory duties and thus frustrate public policy as enunciated by the legislature. Accordingly, I would grant the motion.