Sundstrand Corporation, Plaintiff-Appellee, v. The Department of Revenue, Defendant-Appellant.

(No. 74-341; ▮▮▮▮▮▮▮▮▮▮▮

Second District (1st Division)—December 29, 1975.

William J. Scott, Attorney General, of Chicago (Patricia Rosen and Bonny Barezky, Assistant Attorneys General, of counsel), for appellant.

James W. Keeling, of Thomas, Thomas & Maggio, of Rockford, and Christopher B. Nelson and William T. Harte, both of Schiff, Hardin & Waite, of Chicago, for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

In January of 1968 the taxpayer paid an Illinois "use" tax of $34,150.77 on a jet aircraft purchased by it in 1967 but, in 1971, filed a claim for refund on the ground that the payment had been made under a mistake of law in that said tax constituted a constitutionally impermissible burden on interstate commerce. The Department of Revenue, after a hearing, denied the claim; the circuit court, on administrative review, reversed and ordered a refund; and the Department has appealed, contending that the application of the Illinois Use Tax Act to this transaction does not burden interstate commerce. We agree and reverse.

The taxpayer, a Delaware Corporation with its principal office in Rockford, Illinois, in 1967 purchased a jet plane from Beckett Aviation, Youngstown, Ohio, for $850,000. On December 5, the plane was flown by one of Beckett's crews to Rockford, where it was tested and accepted by the taxpayer. Later that day the plane was flown by one of the taxpayer's crews back to Youngstown, where the Beckett crew left the plane, and then back again to Rockford. The next day it was put into service, transporting the taxpayer's personnel, guests and customers, and occasionally freight, almost exclusively in long haul flights to points outside of Illinois. Sundstrand already had three similar aircraft and the new plane was based at Rockford and was registered with the Illinois Department of Aeronautics during 1968-1971.

The plane is never used for hire. According to the stipulation of the parties the plane was employed in 1440 flights between December 6, 1967, and May 31, 1971. Of these only 48 flights involved successive take-offs and landings at airports within Illinois. Of these 32 were part of interstate flights where the ultimate destination or original departure points were made outside the State of Illinois and an intermediate stop was made in Illinois to pick up or discharge passengers. The major maintenance and repair work on the airplane has been done in other States; there are no facilities in Illinois for performing major repairs on this type of aircraft. These facts do not, however, give the full picture of the contacts of the aircraft with the State of Illinois. The airplane was kept in Illinois between interstate flights for maintenance and to await the next flight. Indeed it appears from the flight records that in most instances the plane returned to Rockford either on the same day or on the next day after its departure from there. In fact in 11 of the months involved there were no flights which did not

return to Rockford on the same or the following day. It is obvious therefore that the airplane not only was technically based in Illinois but spent nearly all of its ground time in this State.

No Ohio tax of any kind was paid on the purchase of the airplane. In the purchase order, Sundstrand indicated that the airplane was subject to Illinois tax. And in January, 1968, Sundstrand paid a use tax on the airplane in the amount of $35,689.27 to the State of Illinois. (As the result of an audit of the taxpayer's return, this amount was later reduced by $1,538.50.) On June 28, 1971, the taxpayer filed a claim for a refund, contending that the payment had been made under a mistake of law in that such a tax upon the purchase constituted under these facts an unconstitutional burden on interstate commerce. The Department of Revenue after a hearing denied the claim. However, the circuit court on administrative review agreed with the taxpayer's contention and reversed, ordering a refund.

■■ The Illinois statute provides for a use tax to be imposed upon the privilege of using (that is, exercising any right over property incident to its ownership), in this State any article of tangible personal property purchased at retail. (Ill. Rev. Stat. 1973, ch. 120, par. 439.3.) The use tax is complementary to the retail sales tax and is not applicable to property already subjected to a retail sales tax whether here or in another State. Assessment of the use tax is integrated with the assessment of the retail sales tax on sales consummated within the State of Illinois, the amount of each tax being based upon the purchase price of the taxable property. The appellee's basic contention is that a levy of the tax on the plane in question would be an unconstitutional burden on interstate commerce.

It is clear that while the airplane was being delivered to Illinois, it is merchandise being transported in interstate commerce and therefore not taxable by the State of Illinois. It is also true that the ability to tax property being used in interstate commerce is limited. Nevertheless, we must start with the basic proposition that "'[i]t was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of the tax burden even though it increases the cost of doing the business.'" (*General Motors Corp. v. Washington* (1964), 377 U.S. 436, 439, 12 L.Ed.2d 430, 434, 84 S.Ct. 1564; *Western Live Stock v. Bureau of Revenue* (1938), 303 U.S. 250, 82 L.Ed. 823, 58 S.Ct. 546.) "'Interstate business must pay its way' (*Western Live Stock v. Bureau of Revenue*, 303 U.S. 250, 254), provided it does not pay too much or too often." (*Martin Ship Service Co. v. City of Los Angeles* (1950), 34 Cal. 2d 793, 796, 215 P.2d 24, 26.) "[T]he mere fact that property is used for interstate commerce or has come into an

owner's possession as the result of interstate commerce does not diminish the protection which he may draw from a State to the upkeep of which he may be asked to bear his fair share. But a fair share precludes legislation obviously hostile or practically discriminatory toward interstate commerce." (*General Trading Co. v. State Tax Com.* (1944), 322 U.S. 335, 338, 88 L.Ed. 1309, 1312, 64 S.Ct. 1028; *Scripto, Inc. v. Carson* (1960), 362 U.S. 207, 212, 4 L.Ed. 660, 80 S.Ct. 619.) "A tax or other burden obviously does not discriminate against interstate commerce where 'equality is its theme'." (*Nelson v. Sears, Roebuck & Co.* (1941), 312 U.S. 359, 364-65, 85 L.Ed. 888, 892, 61 S.Ct. 586.) And the "exemption of those engaged in interstate commerce from the taxation others bear should not be extended beyond the necessity of keeping that commerce free from interference." *Coverdale v. Arkansas-Louisiana Pipe Line Co.* (1938), 303 U.S. 604, 610, 82 L.Ed. 1043, 58 S.Ct. 736.

■■ As stated in *Henneford v. Silas Mason Co.* (1937), 300 U.S. 577, 582-83, 81 L.Ed. 814, 818-19, 57 S.Ct. 524:

> "Things acquired or transported in interstate commerce may be subjected to a property tax, non-discriminatory in its operation, when they have become part of the common mass of property within the state of destination. * * * For like reasons they may be subjected, when once they are at rest, to a non-discriminatory tax upon use or enjoyment. * * * The privilege of use is only one attribute, among many, of the bundle of privileges that make up property or ownership. * * * A state is at liberty, if it pleases, to tax them all collectively, or to separate the faggots and lay the charge distributively. * * * Calling the tax an excise when it is laid solely upon the use * * * does not make the power to impose it less, for anything the commerce clause has to say of its validity, than calling it a property tax and laying it on ownership. 'A nondiscriminatory tax upon local sales * * * has never been regarded as imposing a direct burden upon interstate commerce and has no greater or different effect upon that commerce than a general property tax to which all those enjoying the protection of the State may be subjected.' *Eastern Air Transport, Inc. v. South Carolina Tax Comm'n*, 285 U.S. 147, 153. A tax upon the privilege of use or storage when the chattel used or stored has ceased to be in transit is now an impost so common that its validity has been withdrawn from the arena of debate."

■■ A tax on property or upon a taxable event in the State, apart from operation, does not interfere with interstate commerce (*Southern Pacific Co. v. Gallagher* (1939), 306 U.S. 167, 83 L.Ed. 586, 59 S.Ct. 389), and

"'[p]ractical continuity' does not always make an act a part of interstate commerce." (*Southern Pacific Co. v. Gallagher* (1939), 306 U.S. 167, 177, 83 L.Ed. 586, 593, 59 S.Ct. 389.) Thus what is important is whether there was a taxable moment in the State when the plane had reached the end of its interstate transportation and had not yet begun to be consumed in interstate operation. If so the tax on storage and use-retention and exercise of a right of ownership, respectively—was effective. (*Southern Pacific Co. v. Gallagher* (1939), 306 U.S. 167, 83 L.Ed. 586, 59 S.Ct. 389.) Thus, in *Southern Pacific* and in its companion case *Pacific Telephone & Telegraph Co. v. Gallagher* (1939), 306 U.S. 182, 83 L.Ed. 595, 59 S.Ct. 396, the assessment of a use tax by California was upheld even though the equipment was installed immediately upon arrival in California. In our case the plane was delivered in Illinois on one day and was not put into service until the next; the taxable moment, applying the *Southern Pacific* Doctrine was clearly present.

Sundstrand in arguing that there never was any break in interstate commerce relies principally on *W. R. Grace & Co. v. Comptroller* (1969), 255 Md. 550, 258 A.2d 740, which held that two aircraft purchased by the taxpayer were not subject to Maryland's use tax. The facts in *Grace* are distinguishable from those in the present case. Neither airplane was delivered in Maryland and it would appear that the court held that both became instrumentalities of interstate commerce prior to their arrival in the taxing State. Furthermore, the Maryland court interpreted its use tax to be a tax upon the *privilege* of using, storing or consuming the article in question within the State (emphasis theirs) whereas our tax, like the California tax construed in *Southern Pacific Co. v. Gallagher*, is a tax upon the "exercise of a right of ownership." Moreover, the cases cited by the court in *Grace* do not support its position that the tax may only be imposed if the article is employed in a separate local activity. *Southern Pacific Co. v. Gallagher* allowed the imposition of a use tax although the specially-ordered material was installed for use in the transportation facilities *immediately* upon arrival in California. *Helson v. Kentucky* (1929), 279 U.S. 245, 73 L.Ed. 683, 49 S.Ct. 279, also relied upon by *Grace*, merely stands for the principle that a tax upon commerce or consumption in commerce is forbidden. (*Southern Pacific Co. v. Gallagher* (1939), 306 U.S. 167, 83 L.Ed. 586, 59 S.Ct. 389. See also *United Air Lines, Inc. v. Mahin* (1973), 410 U.S. 623, 35 L.Ed.2d 545, 93 S.Ct. 1186 (court upholding the application of the Illinois use tax to all fuel withdrawn from storage in Illinois for consumption although the consumption was in interstate flight).) In *Helson* the only contact had by the taxpayer with Kentucky, the taxing State, was the use of the ferry through its waters. The operator pur-

chased and took delivery of fuel in Illinois and the office, place of business and situs of all the taxpayer's property were in Illinois. Thus, clearly the exercise of the right of ownership was in Illinois, not in Kentucky.

The last United States Supreme Court case relied upon by *Grace, Michigan-Wisconsin Pipe Co. v. Calvert* (1954), 347 U.S. 157, 98 L.Ed. 583, 74 S.Ct. 396, did not involve a use tax but a tax on gathering gasoline in the State and must be limited to the peculiar facts involved.

In recent years there has been a fall from *Grace* as two more recent cases which involved whether a use tax can validly be levied on an airplane used in interstate commerce have cited *Grace* and refused to follow it, instead upholding the tax. The first of these cases is *Vector Co. v. Benson* (Tenn. 1973), 491 S.W.2d 612. In that case the taxpayer was a Tennessee corporation, the planes were brought to Knoxville, Tennessee, the site of the taxpayer's home office and their operations thereafter were continually ordered and directed from there; the planes, when not in use, occupy tie-down space in a Knoxville airport or in airports where they came to rest after a journey; the aircraft have been used in both intrastate and interstate flights, most flights however being interstate; the aircraft were taxed as personalty in Knox County. The court in upholding the tax and distinguishing *Grace*, pointed out that the planes were Tennessee property.

In the second case*, *In re Woods Corp.* (Okl. 1975), 531 P.2d 1381, the facts are nearly identical to ours. As in our case, the taxpayer was a Delaware corporation but had its principal office in the taxing State. It engages in business in several States and in foreign countries. In 1969 it purchased an aircraft from a California seller for about $430,000. It was delivered to Woods in Billings, Montana. It was then flown to Bethany, Oklahoma where additional equipment was installed. (While the initial delivery, unlike that in the present case was outside of the taxing State, the court held that there was no evidence to indicate that the flight from Montana to Oklahoma was for any other purpose than delivery of the aircraft to Wood's home office.) Subsequently, the airplane was based at Bethany and used to transport Wood's employees for business purposes. Excluding test flights, 97% of flying time involved interstate flights. As was true in *Vector* and is true in the present case, the taxpayer paid no sales or use tax on the purchase of the aircraft to any other State. The court concluded at 531 P.2d 1381, 1384, that:

---

* A third case, *Aspen Airways, Inc. v. Heckers* (Colo. App. 1972), 499 P.2d 636, also upheld the assessment of a use tax on two planes used in interstate commerce. However, the case is perhaps distinguishable in that the taxpayer was only authorized to operate within the State of Colorado and thus *could* not place the aircraft in interstate commerce until they had been delivered to Colorado.

"There was a period time, however short, between the time delivery to Oklahoma was completed and interstate consumption began. *Vector Company, Inc. v. Benson, supra; Aspen Airways, Inc. v. Heckers, supra; Southern Pacific Company v. Gallagher, supra.* At that moment the use tax was effective and such constituted a tax on intrastate events, i.e. the exercise within the State of Oklahoma of rights incident to ownership and possession of the airplane. *Southern Pacific Company v. Gallagher, supra.*"

*Consolidation Coal Co. v. Porterfield* (1971), 25 Ohio St. 2d 154, 54 Ohio Op. 2d 277, 267 N.E.2d 304, also relied upon by the taxpayer involved railway cars and engines which had become instrumentalities of interstate commerce prior to arrival in the taxing State since the railroad cars were leased in Pennsylvania by a Pennsylvania corporation in order to transport coal from Ohio to Michigan and were delivered in Pennsylvania. Quite obviously, there was nothing to prevent Pennsylvania which had more contact with the transaction than did Ohio from levying a tax on the transaction. But for this reason, the court's holding is not pertinent to the instant case.

*Railway Express Agency, Inc. v. Virginia* (1954), 347 U.S. 359, 98 L.Ed. 757, 74 S.Ct. 558; *Spector Motor Service, Inc. v. O'Connor* (1951), 340 U.S. 602, 95 L.Ed. 573, 71 S.Ct. 508; *Alpha Portland Cement Co. v. Massachusetts* (1925), 268 U.S. 203, 69 L.Ed. 916, 45 S.Ct. 477; and *Nippert v. City of Richmond* (1946), 327 U.S. 416, 90 L.Ed. 760, 66 S.Ct. 586, also relied upon by the taxpayer, are not relevant since they involved excise, franchise or license taxes; indeed the court in *Railway Express* distinguished between the permissible State taxation of property at its full value and the prohibited taxation of gross receipts from interstate commerce.

We are aware of *Burlington Northern, Inc. v. Department of Revenue* (1975), 32 Ill.App.3d 166, 336 N.E.2d 170, just handed down by the First District. That opinion is not in point since it dealt with the construction of the "rolling stock" exemption and did not rule on the constitutionality of the use tax as applied to the facts in that case. Nevertheless, to the extent that it may be inferred from language in that opinion that excluding rolling stock only substantially used in interstate commerce and rolling stock primarily used in interstate commerce from that exemption, where such uses were not originally intended, would unduly and unconstitutionally burden interstate commerce, we are not in accord. The Supreme Court in *Southern Pacific Co. v. Gallagher* (1939), 306 U.S. 167, 83 L.Ed. 586, 59 S.Ct. 389, when faced with the question of the constitutionality of the California use

tax when applied to rolling stock and other equipment used in the railroad business, stated at 306 U.S. 167, 172-81, 83 L.Ed. 586, 590-95:

"The appellant, the Southern Pacific Company, a Kentucky corporation, handles intrastate, interstate and foreign commerce over its railroad system which traverses a number of states and connects with the lines of carriers covering the continent. The findings and stipulation of facts show continual extrastate purchases of tangible personality for the operation of the road; rails, equipment, machinery, tools and office supplies. * * * For construction or reconstruction upon a large scale, special orders are given and arrangements made, so that the material is fabricated for a particular use in the transportation facilities, shipped to its California destination and installed upon arrival. To avoid delay and cost the movement from loading to final placement is as nearly continuous as managerial efficiency can contrive. While some articles are capable of general use, the major purchases of rails, repair parts and supplies for the maintenance and operation of the system are adapted only to railroad use. The purchases are paid for out of railroad operating capital and move on company material waybills, without transportation charge. All purchases may be said to be dedicated to consumption in the interstate transportation business of appellant. No new rolling stock is involved. Subsequent to repairing and reconditioning, rolling stock moves again in interstate transportation, as do cars after being stocked with supplies. The California tax on storage or use, it is said, cannot apply to these articles, as such a tax would be an unconstitutional burden upon the facilities of interstate commerce, of which the articles are a part.

There is agreement upon the principle involved. Appellant states that an excise tax imposed directly upon the privilege of using instrumentalities in carrying on interstate transportation is a direct and unconstitutional burden on commerce. Appellees do not dispute the premise but contend that the tax is on intrastate storage and use. They point to the definition of use as the exercise of a right of ownership, and of storage as any keeping or retention. By the definitive terms themselves, it is urged, the taxable events are retention and installation, not such storage as warehousing connotes, or use in the sense of consumption or operation. If we conclude retention and installation, under the circumstances here developed, are intrastate taxable events, viewed apart from commerce, we must still inquire whether taxes

laid upon them are not, in effect, upon commerce, and forbidden.

Two lines of authority aid in considering the effect of this tax on commerce. The first makes it quite clear that a state tax upon the privilege of operating in, or upon carrying on, interstate commerce is invalid. States cannot tax interstate telegraph messages, or freight shipments. A license tax on sales by samples burdens one selling only goods from other states. A tax act as applied to the business of interstate communication is unconstitutional. Where a similar levy by other states may be imposed, with consequent multiplicity of exaction on commerce for the same taxable event, local tax of a privilege, measured by total gross receipts from interstate transactions, is considered identical with an exaction on the commerce itself. * * *
                    *     *     *

The second line of authority supports the view that use and storage as defined in the California act are taxable intrastate events, separate and apart from interstate commerce. A recent discussion of the topic sets out the precedents in support of a ruling that a tax upon the production of power by the use of which compressors drove natural gas in interstate commerce is valid. Such production is a taxable event distinct from its consumption in commerce. Particular attention is called by the state to the *Wallace* case. [*Nashville, Chattanooga, & St. Louis Ry. Co. v. Wallace* (1933), 288 U.S. 249, 77 L.Ed. 730, 53 S.Ct. 345.] There the tax was on 'selling or storing or distributing gasoline.' It became due on withdrawal from storage. The tax was held applicable to gasoline, purchased out of the state and stored in the state, 'when all is withdrawn and used * * * as a source of motive power in interstate railway operation' and valid against the objection that 'it is in effect a tax upon the use' in interstate commerce. [288 U.S. 265-266.] The invalidity of such a tax arises from a levy on commerce itself or its gross receipts, not upon events prior to the commerce.

The principle illustrated by the *Helson* case [*Helson v. Kentucky* (1929), 279 U.S. 245, 73 L.Ed. 683, 49 S.Ct. 279], forbids a tax upon commerce or consumption in commerce. The *Wallace* case, and precedents analogous to it, permit state taxation of events preliminary to interstate commerce. The validity of any application of a taxing act depends upon a classification of the facts in the light of these theories. In the present case some of the articles were ordered out of the state under specification suitable only for utilization in the transportation facilities and in-

stalled immediately on arrival at the California destination. * * * We think there was a taxable moment when the former had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use—retention and exercise of a right of ownership, respectively—was effective. The interstate movement was complete. The interstate consumption had not begun. *Champlain Co. v. Brattleboro* [(1922), 260 U.S. 366, 67 L.Ed. 309, 43 S.Ct. 146], and *Carson Petroleum Co. v. Vial* [(1929), 279 U.S. 95, 73 L.Ed. 626, 49 S.Ct. 292], are therefore inapplicable. *Bacon v. Illinois* [(1913), 227 U.S. 504, 57 L.Ed. 615, 33 S.Ct. 299], where taxation of grain during stoppage in transit was validated, presents a closer analogy. 'Practical continuity' does not always make an act a part of interstate commerce. This conclusion does not give preponderance to the language of the state act over its effect on commerce. State taxes upon national commerce or its incidents do not depend for their validity upon the choice of the thing taxed. It is true, the increased cost to the interstate operator from a tax on installation is the same as from a tax on consumption or operation. This is not significant. The prohibited burden upon commerce between the states is created by state interference with that commerce, a matter distinct from the expense of doing business. A discrimination against it, or a tax on its operations as such, is an interference. A tax on property or upon a taxable event in the state, apart from operation, does not interfere. This is a practical adjustment of the right of the state to revenue from the instrumentalities of commerce and the obligation of the state to leave the regulation of interstate and foreign commerce to the Congress. * * *

Finally, appellants urge that the tax violates the due process clause of the Fourteenth Amendment because exacted for consumption of office and car supplies outside the state, upon their appropriation in California by the general office to the use of the whole system. This contention falls with the determination that the taxable event is the exercise of the property right in California."

We conclude that the majority of cases do not support the taxpayer's contention that it should not pay a use tax merely because the airplane was purchased elsewhere and is being used primarily in interstate commerce. Moreover, the taxpayer has given no reason why it should enjoy a special exempt position not shared by others, including its competitors.

If it had purchased the airplane in Illinois, it would have paid a sales tax. If it had used the plane only in Illinois, the taxpayer concedes the use tax would be due. The aircraft is based in Illinois, generally spending most of its ground time there. There is no added unjust burden because the taxpayer is engaged in interstate commerce. Sundstrand does not even argue that there is a danger of double taxation. Nonetheless, we note that the statute specifically exempts property where a sales or use tax has been paid in some other State. (Ill. Rev. Stat. 1973, ch. 120, par. 439.3(c).) Moreover, it will be time enough to resolve that question when in fact the taxpayer is faced with double or multiple taxation. *Southern Pacific Co. v. Gallagher* (1939), 306 U.S. 167, 83 L.Ed. 586, 59 S.Ct. 389.

■■ In short, we conclude that the use tax may properly be levied on property delivered in Illinois to a corporation having its principal office in Illinois, even though that property, although based in Illinois, is thereafter used exclusively or primarily in interstate commerce.

■■ The taxpayer also contends that the procedure for the conduct of hearings before the Department of Revenue denied the taxpayer due process of law in that the hearing examiner also represented the department. Such procedures, coupled as here with the right to administrative review in the courts, have uniformly been sustained in Illinois. (*Department of Finance v. Gandolfi* (1940), 375 Ill. 237, 240, 30 N.E.2d 737; *Rentra Liquor Dealers, Inc. v. Department of Revenue* (1973), 9 Ill. App.3d 1063, 1069, 293 N.E.2d 388.) It should also be noted that in the case at bar, the real challenge is on the law, not on the facts.

■■ The taxpayer finally contends that the statutory exemption of tangible personal property leased by a carrier for hire is unconstitutional. This same exemption, but in another act, was upheld in *Doolin v. Korshak* (1968), 39 Ill.2d 521, 527-29, 236 N.E.2d 897. Furthermore, even were this exemption invalid, its invalidity would not affect the rest of the act and would therefore not help the taxpayer. As specifically provided by section 18 of the Act (Ill. Rev. Stat. 1971, ch. 120, par. 439.18), if a provision which exempts a class of users from the tax is held unconstitutional, the provision shall be deemed severable and the application of the Act to other persons shall not be affected thereby.

Neither contention has merit. The judgment is therefore reversed.

. Reversed.

GUILD, P. J., and SEIDENFELD, J., concur.