22032

SENN TRUCKING COMPANY, Appellant, v. Robert C. WASSON, Chairman and Charles N. Plowden and John H. LaFitte, Jr., Constituting the Members of the South Carolina Tax Commission, Respondents.

(312 S. E. (2d) 252)

Supreme Court

*Frank A. Graham, Jr.*, Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen., Daniel R. McLeod, Deputy Atty. Gen., Joe L. Allen, Jr.*, and *Staff Atty. Ray N. Stevens*, Columbia, *for respondents.*

Jan. 19, 1984.

*Per Curiam:*

The order of the Honorable Joseph R. Moss, Presiding Judge, properly sets forth and disposes of all issues raised on this appeal. That order with minor modifications is printed as the directive of this Court:

## ORDER

This action was commenced by the plaintiff, Senn Trucking Company (Senn) on December 16, 1980, against the defendant, South Carolina Tax Commission (Commission) under the provisions of § 12-35-1440, *Code of Laws of South Carolina* (1976), seeking a recovery of use taxes paid under protest on November 21, 1980, pursuant to § 12-35-1430 in the amount of $25,726.12. Prior to trial, the parties entered into a Stipulation

of Facts which, along with testimony at trial, form the factual basis for the decision in this case.

Senn is engaged in the business of transporting property by motor vehicle in interstate commerce as a common carrier operating under Certificates of Public Convenience and Necessity granted by the Interstate Commerce Commission. In addition, Senn moves freight in intrastate commerce but such intrastate commerce is much smaller than its interstate business. For example, the evidence shows that gross revenues for 1979 were $13,394,048.39 from interstate commerce, whereas gross revenues from intrastate commerce were $84,240.00.

The taxes sought to be recovered were paid by Senn on fifty trailers it purchased out of state. In each instance, the trailers were transported by Senn to its terminal in Newberry County, S. C. and underwent modifications there. These modifications consisted of adding decals, numbers, signs and license plates, tarpaulins, padding, straps and storage compartments.

The testimony presented at trial shows that based on sales invoices, work orders and drivers' trip tickets, the trailers remained in Newberry County approximately two to three weeks before they were dispatched to pick up their first load of freight. In each instance the trailers picked up their first load in South Carolina and then left the state. The trailers periodically returned to South Carolina to pick up and deliver freight. Finally, the evidence showed that the trailers were registered in Newberry County for property tax purposes.[1]

Against this factual background, I must decide two issues:

(1) Is Senn subject to a use tax on the fifty trailers?

(2) If Senn is subject to a use tax, is there an exemption applicable to the transactions in this case which removes them from the liability for a use tax?

Section 12-35-810 is the applicable section of the South Carolina Code which imposes a use tax. The pertinent part of such section is as follows:

An excise tax is imposed on the storage, use or other consumption in this State of tangible personal property

---

[1] At oral argument, counsel for Senn admitted that sales or use tax had not been paid in any other state. It appears to be admitted that property taxes were paid on three units in Newberry County; counsel stated that he did not know whether property tax had been paid on the other forty-seven units in any other state.

purchased at retail for storage, use or other consumption in this State, at the rate of four percent of the sales price of such property, regardless of whether the retailer is or is not engaged in business in this State.

To establish a use tax there must be (1) a showing of either a storage, use or other consumption of tangible personal property in South Carolina and (2) such tangible personal property must have been purchased at retail. Each of these elements are satisfied in the case of Senn Trucking Company.

The criteria for a "use" in South Carolina is set forth in § 12-35-160 as follows:

The term "use" includes the exercise of any right of power over tangible personal property incident to the ownership of that property or by any transaction in which possession is given, except that it shall not include the sale of that property in the regular course of business.

The evidence before me demonstrates that Senn exercised its "right or power over tangible personal property incident to ownership of that property." Senn exercised its rights incident to ownership by transporting the trailers to Silverstreet in Newberry County. While at Silverstreet, Senn made alterations and changes to the trailers which further show an exercise of ownership rights. The trailers were subject to Senn's control since Senn put them into service in South Carolina in that they picked up their first load of freight in this State. Finally, Senn exercised its power over the trailers by having them registered in Newberry County for property tax purposes.[2]

Although it is sufficient for a use tax liability that only a use in South Carolina be shown, the evidence shows that not only was there a use, but also there was a storage of the trailers in South Carolina sufficient to make Senn liable for the use tax. The statute defines storage at § 12-35-130 as follows:

The term "storage" includes any keeping or retention in this State, for any purpose except sale in the regular

---

[2] *See*, footnote 1, *supra.*

course of business or subsequent use solely outside this State, of tangible personal property purchased at retail.

Under this definition, the trailers were in storage until they were dispatched to pick up a load of freight in South Carolina. The length of this storage, based on the evidence before me, was approximately two to three weeks before the trailers were dispatched to pick up their first load of freight.

Having established that there was a use and a storage of the trailers in South Carolina, the use tax statute requires that the purchase of tangible personal property be at retail. Section 12-35-110 explains that a retail sale means all sales except those defined as wholesale sales. Section 12-35-170 explains that a wholesale sale does not include a sale to users or consumers. Since Senn is the ultimate user and consumer of the trailers, the sales to Senn are not at wholesale and, therefore, are sales at retail.

Thus, I conclude that the purchase of the fifty trailers and subsequent use and storage in South Carolina make Senn subject to the use tax imposed by § 12-35-810. Having so concluded, the second issue of whether an exemption applies to this transaction must be addressed.

Section 12-35-820(2) provides an exemption from use tax for all tangible personal property specifically exempted from the tax imposed by the provisions of Article 5 of Chapter 35, which covers sales tax. Section 12-35-550(1) of the sales tax provisions grants an exemption for sales of tangible personal property which South Carolina is prohibited from taxing under the Constitution or laws of the United States. Senn argues that Article 1, Section 8 of the United States Constitution, commonly referred to as the Commerce Clause, prohibits South Carolina from taxing the use of the fifty trailers since such trailers are vehicles used in interstate commerce. The position of the Tax Commission is that the activities giving rise to the tax are all intrastate and that there existed a taxable moment in South Carolina when the trailers came to rest in this State. Thus, the question is whether the use of the trailers is interstate in nature and thus exempt or taxable as an intrastate event.

The United States Supreme Court in *Southern Pacific Co. v. Gallagher*, 306 U. S. 167, 59 S. Ct. 389, 83 L. Ed. 586 (1939), dealt with a California use tax on property bought outside

California and then brought into that state where it was attached to railroad equipment which moved in interstate commerce. The court's analysis is applicable to the instant case and such analysis is quoted below:

> The principle illustrated by the *Helson [v. Com. of Kentucky by board]* Case [279 U. S. 245, 49 S. Ct. 279, 73 L. Ed. 683] forbids a tax upon commerce or consumption in commerce. The *[Nashville, C & St L. Ry. v.] Wallace* Case [288 U. S. 249, 53 S. Ct. 345, 77 L. Ed. 730] and precedents analogous to it, permit state taxation of events preliminary to interstate commerce. The validity of any application of a taxing act depends upon a classification of the facts in the light of these theories. In the present case some of the articles were ordered out of the state under specification suitable only for utilization in the transportation facilities and installed immediately on arrival at the California destination. If articles so handled are deemed to have reached the end of their interstate transit upon "use or storage," no further inquiry is necessary as to the rest of the articles which are subjected to a retention, by comparison, farther removed from interstate commerce. We think there was a taxable moment when the former had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use — retention and exercise of a right of ownership, respectively — was effective. The interstate movement was complete. The interstate consumption had not begun.....
> "Practical continuity" does not always make an act a part of interstate commerce. This conclusion does not give preponderance to the language of the state act over its effect on commerce. State taxes upon national commerce or its incidents do not depend for their validity upon a choice of words but upon the choice of the thing taxed. It is true, the increased cost to the interstate operator from a tax on installation is the same as from a tax on consumption or operation. This is not significant. The prohibited burden upon commerce between the states is created by state interference with that commerce, a matter distinct from the expense of doing business. A discrimination against it, or a tax on its operations as such,

is an inteference. A tax on property or upon a taxable event in the state, apart from operation, does not interfere. This is a practical adjustment of the right of the state to revenue from the instrumentalities of commerce and the obligation of the state to leave the regulation of interstate and foreign commerce to the Congress.

[Here the trial judge quotes at length *Henneford v. Silas Mason Co.*, 300 U. S. 577, 57 S. Ct. 524, 81 L. Ed. 814 (1937), to the same effect. The quotation is omitted for the sake of brevity.]

With these cases as the legal background, the facts show that the tax in the instant case is a tax on the use and storage in South Carolina and is not a tax on interstate commerce. The "use" which is defined as the exercising of any right or power over the ownership of the trailers occurred within South Carolina since the trailers were transported by Senn to Newberry County, alterations and modifications were made in Newberry, the trailers were registered for property tax purposes in Newberry County, and Senn directed that the trailers pick up freight within South Carolina. Each of these activities shows the exercising of a power over the ownership of the trailers and such activities all occurred within the borders of South Carolina. These activities are all intrastate and do not cause a tax to be laid on interstate commerce.

Further support for the conclusion that the tax is on only an intrastate event is found from the fact that storage of the trailers occurred in South Carolina. Evidence shows that storage was made in this State for two to three weeks. Based on the holdings of *Southern Pacific, supra*, and *Henneford, supra*, the events leading up to the use and storage within a state and the events after the use and storage within a state are not controlling factors. The tax is levied when the trailers ceased to be in transit and, in the instant case, cessation occurred in South Carolina. As the Supreme Court said in *International Harvester Co. v. Department of Treasury*, 322 U. S. 340, 64 S. Ct. 1019, 88 L. Ed. 1313 (1944):

But in each a local transaction is made the taxable event and that event is separate and distinct from the transportation or intercourse which is interstate commerce.

In summary, the general rule of property coming to rest within a state as making the property subject to a use tax has been stated in 68 Am. Jur. (2d) *Sales and Use Taxes*, Section 190:

> ... the decisions relating to use tax statutes have for the most part been consistent in holding that, in their application to tangible personal property carried into the state and there brought to rest permanently, or merely halted for a moment before resuming its interstate course or character, taxes upon the privilege of use, storage, or consumption within the state do not impose an unconstitutional burden on interstate operations or instrumentalities ....

Since the exercising of powers of ownership over the trailers and storage occurred in South Carolina before the trailers began any movement in interstate commerce, the use tax is not in violation of the Commerce Clause and thus no exemption is afforded Senn Trucking Company.

One final argument raised by Senn is that its rights to the equal protection of the laws have been violated. Senn argues that its rights to the equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 3 of the South Carolina Constitution have been violated since § 12-35-550(20) grants an exemption to railroad equipment whereas no such exemption is given to trucking equipment. In short, Senn argues that it is the subject of discrimination. The position of the Tax Commission is that there is no discrimination and that the classification including railroads within an exempt class is within the power of the General Assembly to make.

Our Supreme Court in *State v. Byrnes*, 219 S. C. 485, 66 S. E. (2d) 33 (1951), explained the role of equal protection in evaluating the sales tax exemptions.

> To invalidate a tax statute for discrimination, in the absence of specific constitutional inhibition, exemption from its terms must be purely arbitrary, which cannot be fairly said of the exemptions contained in the Act before us. It was said in *Marshall v. Tax Comm.*, *supra*, (178 S. C. [57] at page 62, 182 S. E. [96] at page 98) upon the author-

ity of numerous cited decisions of the U. S. Supreme Court: "The plaintiff must be able to satisfy the court that the classification (of income for State taxation) has its origin in nothing better than whim and fantasy and tyrannical exercise of arbitrary power, before the tax in question will be stricken down."

In the instant case there is no evidence which shows that the classification is based on nothing but "fantasy and tyrannical exercise of arbitrary power." The General Assembly is free to make classifications which it finds to be reasonable and such classifications can be overturned only by the plaintiff's carrying the burden of proof that the classification is arbitrary. *Gregg Dyeing Co. v. Query*, 166 S. C. 117, 164 S. E. 588 (1931), affirmed 286 U. S. 472, 52 S. Ct. 631, 76 L. Ed. 1232. There are inherent differences in railroads and trucks such as a railroad's mobility being limited by tracks whereas trucks are allowed free access on highways. The General Assembly's decision to exempt railroads and not to exempt trucks and trailers is not an arbitrary classification and thus no violation of Senn's equal protection rights has been shown.

Since Senn has been found to be subject to a use tax on the fifty trailers in question and since no exemption is available and no violation of equal protection has been found, I conclude that the use tax at issue in this case is proper.

Affirmed.