ARCHER DANIELS MIDLAND COMPANY, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE, Defendant-Appellee.

First District (2nd Division) No. 87—2636

Opinion filed May 17, 1988.

---

*Justice Stamos participated in the decision of this case prior to taking office as a supreme court judge.

Vincent M. Aquilino and Jeffrey D. Berry, both of Chapman & Cutler of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Michael J. Wynne, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff (ADM) appeals from a decision of the circuit court of Cook County affirming the decision by the Department of Revenue (the Department) to assess tax, penalty and interest against ADM under the Illinois and municipal use taxes (Ill. Rev. Stat. 1985, ch. 120, par. 439.3; Ill. Rev. Stat. 1985, ch. 24, par. 8—11—6) on three jet aircraft owned by ADM. We affirm the imposition of the Illinois use tax, but reverse on the municipal use tax.

Plaintiff is a Delaware corporation with its world headquarters located in Decatur, Illinois, the management and operation of which are

centralized and located primarily at ADM's headquarters in Decatur. Given its centralized management and its operations in all States, it is essential to ADM's business that it own several aircraft. The use of such aircraft is limited to approximately 20 corporate officers and employees, and authorization for their use and approval of all who may be passengers thereon must be had from one of these officers and employees. Each ADM aircraft is used solely and exclusively at the direction of ADM personnel for business purposes.

The three aircraft at issue are: (1) N244A, a Falcon 10 aircraft purchased on December 10, 1979, for $2,906,148; (2) N344A, a Falcon 10 aircraft purchased on July 15, 1980, for $2,353,845; and (3) N444AD, a KingAir Beechcraft aircraft purchased on September 5, 1980, for $1,100,000. Each aircraft was purchased at retail from a retailer in another State, and ADM accepted delivery, took title and registered each aircraft with the Federal Aviation Administration in Wilmington, Delaware, on the date of purchase, although at the time of purchase each aircraft was located and hangared in St. Louis, Missouri. The parties have stipulated that a legitimate business purpose was served by the presence of the aircraft in Missouri. The record does not reveal, and ADM does not allege, that either a use, sale or occupation tax was paid at the time of purchase, or at any time thereafter, in the State of purchase or in any other State. After some interstate flights from Missouri, each aircraft entered Illinois 30 days after its purchase, and each was thereafter hangared and maintained at Decatur, Illinois. In excess of 90% of the flight segments (i.e., one takeoff and one landing) of aircraft N244A and N344A are from Decatur to destinations outside Illinois. With respect to N444AD, in excess of 70% of its flight segments are from Decatur, Illinois, to destinations outside Illinois.

The Department of Revenue conducted a tax audit of ADM for the period from January 1978 through December 1981 (the audit period), and on February 22, 1985, it issued a "Notice of Tax Liability" (NTL) relating to the ADM aircraft and assessing tax, interest and penalties due under the Illinois and municipal use taxes. ADM timely filed its administrative protest of the NTL on March 5, 1985, and after a hearing the administrative law judge excluded from the NTL the amounts of tax, penalty and interest assessed upon a fourth aircraft owned by a wholly owned subsidiary, under exclusive control of that subsidiary and which had only 18 Illinois landings or takeoffs out of a total of 400. The remainder of the decision of the administrative law judge resulted in the issuance of a final assessment on October 1, 1986. ADM appealed this decision to the circuit court.

At the hearing before the trial judge ADM argued that the taxable moment doctrine, which permits the imposition of a use tax upon the occurrence of an intrastate event which sufficiently interrupts the flow of interstate commerce, is the threshold test to be applied in determining whether such a tax may be imposed on interstate commerce. If a taxable moment has occurred, ADM continued, the four-prong test of *Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 51 L. Ed. 2d 326, 97 S. Ct. 1076, must be applied. The Department contended that *Complete Auto* overruled the need for the taxable moment doctrine, and that a tax is proper if the *Complete Auto* test is met. In affirming the decision of the administrative law judge, the trial judge traced the development of a State's power to tax interstate commerce, beginning with *Gibbons v. Ogden* (1824), 22 U.S. (9 Wheat) 1, 6 L. Ed. 23, and noted that

> "[t]he historical review of the Commerce Clause reveals the shift of positions: (1) originally, the Commerce Clause in essence prohibited State Taxation; (2) then the clause was construed as permitting some taxation (*Cooley v. Board of Wardens* (1851), 54 U.S. 299); (3-4) direct and indirection [*sic*] then became the guiding distinction. Direct taxes were prohibited and indirect taxes were authorized if the state tax imposed cumulative burdens on interstate commerce which were not imposed on local commerce; (5) generally commentators have now taken the position that *Complete Auto Transit* is [the proper test.]"

The judge then concluded that the modern trend was in favor of an economic analysis in which the main inquiry focuses upon the nexus between the taxpayer's activities and the State. He then held:

> "The requirement of the 'taxable moment' need not be satisfied if the four prong *Complete Auto Transit* test is met. There is an overlap between the concept of the 'taxable moment' and the sufficient nexus required under *Complete Auto Transit* in that the taxable moment may, but need not, constitute the sufficient nexus. The fact that a corporation has headquarters in a state and uses the state as a home base for its property can be a sufficient nexus with respect to that property."

ADM appeals from the decision of the circuit court.

OPINION

I

The Illinois use tax provides in part as follows:

> "§3. A tax is imposed upon the privilege of using in this State

tangible personal property *** purchased at retail from a retailer. Such tax is at the rate of 5% of either the selling price or the fair market value, if any, of such property as provided herein. ***

* * *

To prevent actual or likely multistate taxation, the tax herein imposed does not apply to the use of tangible personal property in this State under the following circumstances:

***

(b) the use, in this State, of tangible personal property by an interstate carrier for hire as rolling stock moving in interstate commerce ***;

***

(d) the use, in this State, of tangible personal property which is acquired outside this State and caused to be brought into this State by a person who has already paid a tax in another State in respect to the sale, purchase or use of such property, to the extent of the amount of such tax properly due and paid in such other State." (Ill. Rev. Stat. 1985, ch. 120, par. 439.3.)

The use tax is complementary to the retail sales tax and is not applicable to property already subject to a retail sales tax whether in Illinois or another State. "Assessment of the use tax is integrated with the assessment of the retail sales tax on sales consummated within the State of Illinois, the amount of each tax being based upon the purchase price of the taxable property." *Sundstrand Corp. v. Department of Revenue* (1975), 34 Ill. App. 3d 694, 696, 339 N.E.2d 351.

■ Plaintiff contends that before this tax may be imposed on an instrumentality of interstate commerce a taxable moment must occur, and only after this incidence of taxation has occurred should a court consider the applicability of the four-part *Complete Auto* test:

(1) The tax must be applied to an activity having a substantial nexus with the taxing State;

(2) The tax must be fairly apportioned;

(3) The tax must not discriminate against interstate commerce; and

(4) The tax must be fairly related to the services provided by the State. (*Complete Auto Transit, Inc.*, 430 U.S. at 279, 51 L. Ed. 2d at 331, 97 S. Ct. at 1079.)

Plaintiff maintains that a "taxable moment" has not occurred in this case and that the trial court erred in applying the *Complete Auto* test and finding that the ADM aircraft is subject to taxation. In support of its argument plaintiff relies on *Southern Pacific Co. v. Gallagher*

(1939), 306 U.S. 167, 83 L. Ed. 586, 59 S. Ct. 389, in which the Court upheld a California use tax on the storage and use of goods that had been shipped by rail from out of the State of California to be used in the taxpayer's railroad operations. The Court found that there was a taxable moment between the time the goods reached the end of their interstate transportation and the time they began to be consumed in interstate operation.

The Department responds that plaintiff, in its argument, "turns its back on ten years of legal development." The Department further claims that the taxable moment doctrine arose in the pre-minimum contacts era and was the product of the now abandoned movement-vs-nonmovement distinction, which did not allow State taxation of goods "in movement" in interstate commerce. It further maintains that the *Complete Auto* test is now the proper standard.

In *Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 51 L. Ed. 2d 326, 97 S. Ct. 1076, the Court upheld Mississippi's application of its "privilege of doing business" tax to Complete Auto's activity in interstate commerce. Complete Auto made no claim that its activity was not sufficiently connected to Mississippi to justify a tax, or that the tax was not fairly related to benefits provided by the State, or that the tax discriminated against interstate commerce, or that the tax was not fairly apportioned (430 U.S. at 277-78, 51 L. Ed. 2d at 330, 97 S. Ct. at 1078), but merely argued that a tax on the "privilege" of engaging in an activity that is part of interstate commerce is unconstitutional. In upholding the tax the Court noted that it "consistently has indicated that 'interstate commerce may be made to pay its way,' and has moved toward a standard of permissibility of state taxation based upon its actual effect rather than its legal terminology." 430 U.S. at 281, 51 L. Ed. 2d at 332, 97 S. Ct. at 1080.

Plaintiff contends that the taxable moment doctrine is still viable and claims that it was applied in the post-*Complete Auto* case of *Maryland v. Louisiana* (1981), 451 U.S. 725, 68 L. Ed. 2d 576, 101 S. Ct. 2114, in which the United States, a number of pipeline companies and several States challenged the constitutionality of Louisiana's tax on the "first-use" of any natural gas brought into Louisiana which was not previously subjected to taxation by another State or the United States. The use tax was imposed on pipeline companies upon gas produced in the Federal Outer Continental Shelf (OCS) and then piped to facilities in Louisiana for refining and processing and, for the most part, eventually sold to out-of-State consumers. In its brief plaintiff maintains that the Court found that "although a sufficient nexus existed to support otherwise valid taxation, the flow of gas from OCS

wells to processing plants in Louisiana and thereafter to consumers in several other States was a continual flow of gas in interstate commerce and therefore constitutionally protected from use taxation."

Plaintiff misapprehends the holding in *Maryland,* a more complete statement of which is as follows:

"Prior case law has established that a state tax is not *per se* invalid because it burdens interstate commerce since interstate commerce may constitutionally be made to pay its way. [Citations.] The State's right to tax interstate is limited, however, and no state tax may be sustained unless the tax: (1) has a substantial nexus with the State; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to the services provided by the State. \* \* \*

Initially, it is clear to us that the flow of gas from the OCS wells, through processing plants in Louisiana, and through interstate pipelines to the ultimate consumers in over 30 States constitutes interstate commerce. Louisiana argues that the taxable 'uses' within the State break the flow of commerce and are wholly local events. But although the Louisiana 'uses' may possess a sufficient local nexus to support otherwise valid taxation, we do not agree that the flow of gas from the wellhead to the consumer, even though 'interrupted' by certain events, is anything but a continual flow of gas in interstate commerce. \* \* \*

A state tax must be assessed in light of its actual effect considered in conjunction with other provisions of the State's tax scheme. \* \* \* In this case, the Louisiana First-Use Tax unquestionably discriminates against interstate commerce in favor of local interests as the necessary result of various tax credits and exclusions." 451 U.S. at 754-56, 68 L. Ed. 2d at 600-01, 101 S. Ct. at 2133-34.

"It may be true that further hearings would be required to provide a precise determination of the extent of the discrimination in this case, but this is an insufficient reason for not now declaring the Tax unconstitutional and eliminating the discrimination. \* \* \* Accordingly, we grant plaintiffs' exception that the First-Use Tax is unconstitutional under the Commerce Clause because it unfairly discriminates against purchasers of gas moving through Louisiana in interstate commerce." (451 U.S. at 759-60, 68 L. Ed. 2d at 604, 101 S. Ct. at 2136.)

The Court clearly did not apply the "taxable moment" doctrine in this case; its determination that the flow of gas was a continual flow in interstate commerce was necessary in order to find that *Complete*

*Auto* applied. The Louisiana tax then had to meet all four prongs of the test in order to pass constitutional muster, and the Court's finding of discrimination was enough to invalidate it. In recent commerce clause cases the Supreme Court has consistently applied *Complete Auto* test without considering the presence of a taxable moment in order to determine whether a State may apply a tax on interstate commerce. *Commonwealth Edison Co. v. Montana* (1981), 453 U.S. 609, 69 L. Ed. 2d 884, 101 S. Ct. 2946; *Mobil Oil Corp. v. Commissioner of Taxes* (1980), 445 U.S. 425, 63 L. Ed. 2d 510, 100 S. Ct. 1223.

## II

■■ Plaintiff next argues that a number of State courts have applied the taxable moment doctrine and contends that Illinois clearly recognizes the doctrine as a principle of Illinois law. (*Sundstrand Corp. v. Department of Revenue* (1975), 34 Ill. App. 3d 694.) In that case Sundstrand, a Delaware corporation with its principal place of business in Illinois, challenged the taxation of its aircraft pursuant to Illinois' use tax (Ill. Rev. Stat. 1973, ch. 120, par. 439.3), contending that such taxation constituted a constitutionally impermissible burden on interstate commerce. Sundstrand purchased the plane in Ohio on December 5, 1967, and flew it to Rockford, back to Ohio, and again to Rockford that same day. The plane commenced interstate flights the next day. In determining whether the plane was subject to taxation the court noted that there were not many successive take-offs and landings at airports in Illinois and that major maintenance and repair work on the plane was done outside Illinois. The court further noted:

> "These facts do not, however, give the full picture of the contacts of the aircraft with the State of Illinois. The airplane was kept in Illinois between interstate flights for maintenance and to await the next flight. Indeed it appears from the flight records that in most instances the plane returned to Rockford either on the same day or on the next day after its departure from there. *** It is obvious therefore that the airplane not only was technically based in Illinois but spent nearly all of its ground time in this State." (*Sundstrand Corp.*, 34 Ill. App. 3d at 695-96.)

The court went on to apply the taxable moment doctrine and found that the tax was properly applied.

*Sundstrand* was decided prior to *Complete Auto,* and the trial judge stated that "*Sundstrand* presages a minimum contacts analysis," because it considered factors in addition to whether there was a taxable moment and therefore went beyond that test. The Department contends that Illinois no longer follows the taxable moment doctrine,

relying on *Goldberg v. Johnson* (1987), 117 Ill. 2d 493, 512 N.E.2d 1262, which upheld an excise tax on interstate telecommunications. In that case, the court found that interstate communication is interstate commerce and stated:

> "We agree with the parties that the four-part test enunciated by the Supreme Court in *Complete Auto* controls our decision on the commerce clause issue." 117 Ill. 2d at 500.

Plaintiff relies on a number of cases from other jurisdictions which applied the taxable moment doctrine to argue that Illinois should continue to do so. Although other States may continue to apply the doctrine (*Federated Department Stores, Inc. v. Tax Commissioner* (Ohio App. September 9, 1987), No. C—860582; *Senn Trucking Co. v. Wasson* (1984), 280 S.C. 279, 312 S.E.2d 252; *Louisville & Nashville R.R. Co. v. Department of Revenue* (Ky. App. 1977), 551 S.W.2d 259), some do so because of the peculiar wording of their tax statutes (*Service Merchandise Co. v. Jackson* (Tenn. 1987), 735 S.W.2d 443, 444) (use tax levied on "the use, the consumption, the distribution, and the storage to be used or consumed in this state of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state"). The trial judge considered the cases plaintiff relied upon, found that they were "disharmonious" and stated that "the trend among the state courts is in favor of an economic analysis over 'formal semantic distinctions.' "

██ Under an economic analysis, plaintiff's planes are subject to taxation. Plaintiff clearly has a substantial nexus with Illinois, inasmuch as its world headquarters are located here; and because the tax rate is the same for the sale and use taxes there is no discrimination against interstate commerce.

The second and fourth parts of the *Complete Auto* test require that a tax be fairly apportioned and fairly related to the services provided by the State. ADM argues that it is unfair and unconstitutional to tax it on the full purchase price of its planes and argues that it should be taxed on only the proportion of takeoffs and landings from or in Illinois compared to total flight take offs and landings. It further argues that flight segments that have no connection with Illinois should not be taxed, because they are not related to any service provided by Illinois, and taxing the full purchase price in essence taxes ADM for activities unrelated to the State.

The Department responds that the use tax is fairly apportioned, as the statute exempts property where a sales or use tax has been paid in some other State. (Ill. Rev. Stat. 1985, ch. 120, par. 439.3(d).) As noted above, ADM has not claimed that it paid taxes on its planes elsewhere;

therefore, it has not been subject to multistate taxation. The sales and use taxes are complementary and equalize the burden on interstate and intrastate transactions. The sales tax is measured by the purchase price of an item, without regard to the amount of use the item will receive, and so is the use tax. Nor is the use tax a precise charge for benefits provided by the State. ADM enjoys the protection of Illinois laws, access to its legal system, and innumerable other services. Because ADM receives all these benefits, it is properly subject to taxation in this State.

### III

■ Plaintiff next contends that even if this court were to conclude that Federal law no longer requires a taxable moment it could still impose that test as the threshold requirement under Illinois law, and thus afford Illinois taxpayers greater protection from taxation than is required by Federal law. The Department responds that this case involves an alleged violation of the commerce clause and the United States Supreme Court is the final authority on Federal constitutional matters. Further, the Court announced the test to be applied to determine when a State may tax interstate commerce in *Complete Auto,* and all courts must follow that authority.

Plaintiff relies on *Searle Pharmaceuticals, Inc. v. Department of Revenue* (1987), 117 Ill. 2d 454, 512 N.E.2d 1240, for the proposition that Illinois courts have authority to provide greater protection to Illinois taxpayers than that afforded by Federal law. In *Searle,* the court held that a section of the Illinois Income Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 2—203(e)(2)(E)) violated the uniformity clause of the Illinois Constitution. However, the court in *Searle* interpreted a State constitutional provision more strictly than its Federal counterpart; it did not interpret a Federal constitutional provision more strictly than do Federal courts. The Supreme Court has stated that courts should look at the practical effect of a tax challenged under the commerce clause (*Commonwealth Edison Co. v. Montana* (1981), 453 U.S. 609, 69 L. Ed. 2d 884, 101 S. Ct. 2946); accordingly, adoption of a taxable moment doctrine would be at variance with the interpretation of that clause by the Supreme Court.

### IV

■ Finally, plaintiff contends that imposition of the Illinois use tax on its aircraft violates the uniformity clause of the Illinois Constitution. The use tax provides an exemption for commercial aircraft transporting persons for hire (Ill. Rev. Stat. 1985, ch. 120, par. 439.3(b)),

and ADM argues that there is no basis for distinguishing between its aircraft and commercial aircraft for purposes of use taxation. In response to the Department's assertion that it waived this argument by failing to raise it at the trial level, ADM maintains that its contention is "a logical part of its argument that Illinois law provides greater protection to its taxpayers than the Commerce Clause." However, although *Searle* was decided in June 1987, after all the pleadings had been filed in this case, plaintiff was surely aware of the provisions of the Illinois use tax long before *Searle* was decided, yet at no point did it bring its argument before the trial court. An appellate court will not consider an argument that is raised for the first time on appeal (*Snow v. Dixon* (1977), 66 Ill. 2d 443, 362 N.E.2d 1052); therefore, this court declines to address this argument.

## V

 Plaintiff also appeals the imposition of Decatur's use tax, although neither it nor the Department briefed the issue. The Illinois Municipal Use Tax Act provides as follows:

> "The corporate authorities of a municipality may impose a tax upon the privilege of using, in such municipality, any item of tangible personal property which is purchased outside Illinois at retail from a retailer, and which is titled or registered with an agency of this State's government." (Ill. Rev. Stat. 1985, ch. 24, par. 8—11—6.)

As previously noted, plaintiff took title and registered each plane with the Federal Aviation Administration in Wilmington, Delaware. The parties have stipulated that the aircraft was not titled or registered with an agency of Illinois and that ADM was not required to do so. Thus, although the municipal use tax is valid under the commerce clause, under the facts of this case it was improperly imposed.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

HARTMAN, P.J., and STAMOS, J.,* concur.

---

*Justice Stamos participated in the decision of this case prior to taking office as a supreme court judge.